[Crim. No. 21579. First Dist., Div. One. Dec. 30, 1981.]

In re RAYMOND DORMIO on Habeas Corpus.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Allan H. Keown, Deputy State Public Defender, for Appellant.

Selby Brown, Jr., County Counsel, and Susan G. Levenberg, Deputy County Counsel, for Respondent.

OPINION

**ELKINGTON, Acting P. J.**—On jail inmate Raymond Dormio's superior court pro se petition for a writ of habeas corpus he was granted some, and denied other, of the substantive relief sought by him. His an-

cillary "motion for attorney's fees pursuant to section 1021.5 of the California Civil Code of Proceedure [*sic*] and Title 42 [U.S.C.A.] section 1988 [of] the Civil Rights Attorney's Fees Awards Act of 1976" was denied. He appeals from that portion of the superior court's order denying his motion for attorney fees.

The procedural posture of the cause is uncertain. One may not ordinarily appeal from an adverse decision on habeas corpus; the same relief may be obtained by again filing a habeas corpus application in a higher court. (*In re Richard M.* (1975) 14 Cal.3d 783, 789 [122 Cal. Rptr. 531, 537 P.2d 363]; *In re Bruegger* (1928) 204 Cal. 169, 170 [267 P. 101].) Under the rule of liberal construction of the right of review (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 336, pp. 4313-4315), we treat the appeal also as a renewed habeas corpus petition in this court.

The facts are uncontroverted.

While Dormio was an inmate of the Santa Clara County jail he was representing himself in civil and criminal litigation in several other jurisdictions. Being dissatisfied with the telephone accommodation of the jail allowed him in personally handling the litigation, he filed a "habeas corpus" petition on behalf of himself, and other similarly situated jail inmates, against the county sheriff and the telephone company, seeking its improvement. After extended hearings thereon, a rule or policy was ordered under which some of the relief he sought was allowed, and some was denied. Dormio describes that which he "actually gained in return for his efforts [as] two extra phone calls per week and a lot of extra headaches."* No appeal was taken by the sheriff or telephone company from the order, which is now final.

Following entry of the superior court's order Dormio moved the court that as a "private attorney general" he be allowed attorney fees of $10,588.75 covering 134 hours, 15 minutes, of time spent by him on the habeas corpus proceedings. Relied upon were the above mentioned Code of Civil Procedure section 1021.5 and 42 United States Code section 1988.

---

*In an otherwise unsupported, but uncontroverted, statement the county advises us that as of July 10, 1981, "no court appointed pro pers other than Mr. Dormio have utilized this opportunity."

Dormio was not an attorney, nor had he employed or retained an attorney in the superior court habeas corpus proceedings (hereafter, for convenience, the proceedings). The attorney fees sought by him were for himself alone as compensation for his services in the proceedings.

In the superior court Dormio argued that "to deny petitioner an award of attorney's fees where he successfully prevailed, solely on the fact that the petitioner was not a member of the bar, would cause a 'chill' to be placed upon the great American premise of *free enterprise* and would of course raise a constitutional question of equal rights."

■ In California: "'An award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter."'" (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 941 [154 Cal.Rptr. 503, 593 P.2d 200].)

And the concept of "private attorney general" vindicates "a policy that Congress considered of the highest priority." (*Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1265, 88 S.Ct. 964].)

Code of Civil Procedure section 1021.5, as found relevant, states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest . . . ."

Title 42 United States Code section 1988 provides in pertinent part: "In any action or proceeding to enforce a provision [of the Civil Rights Act], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

Dormio here contends that insofar as the proceedings were successful, all county jail inmates were benefited, and that he had accordingly advanced an important right affecting the public interest. And he points out that he was the "successful party" (Code Civ. Proc., § 1021.5) and "prevailing party" (42 U.S.C. § 1988) to whom the statutes say attorney fees may be awarded.

█ We are of the opinion that Dormio misinterprets both the statutes and the "private attorney general" rationale.

It is clear that the statutes with which we are here concerned allow, in proper cases, orders for payment of reasonable attorney fees to the prevailing or successful party of a lawsuit. But just as clear is the implication that such party will thereby be reimbursed for attorney fees paid, or relieved of his personal obligation to pay them, or in any event that the attorney not go unpaid for the services resulting in public benefit as found by the trial court.

California's courts have consistently recognized and articulated this purpose. "'[A]s a result of the efforts of plaintiffs' attorneys rights created or protected by *the State Constitution* are protected to the benefit of a large number of people, plaintiffs' attorneys are entitled to reasonable attorney's fees from the defendants under the private attorney general equitable doctrine.'" (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 46 [141 Cal.Rptr. 315, 569 P.2d 1303].) "'An award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter . . . ."'" (*Lucchesi* v. *City of San Jose* (1980) 104 Cal.App.3d 323, 335-336 [163 Cal.Rptr. 700].) "[I]t would be an undue financial burden to place upon [the successful plaintiff] the costs of this necessary private enforcement of this important right. These fees should not in the interest of justice be paid out of her comparatively slight recovery of benefits in this case." (*Gunn* v. *Employment Development Dept.* (1979) 94 Cal.App.3d 658, 666 [156 Cal. Rptr. 584].)

Federal courts are in agreement on the purpose of the "private attorney general" concept. "[H]e does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest . . . ." (*Newman* v. *Piggie Park Enterprises, supra*, 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1265-1266]; fn. omitted.) A "private attorney general" "will be reimbursed for his legal fees when his litigation confers 'a substantial benefit on the members of an ascertainable class, . . .'" (*Incarcerated Men of Allen County Jail* v. *Fair* (6th Cir. 1974) 507 F.2d 281, 284.) "It was proper for client to be made real party in interest in proceeding to recover attorney

fees for successful prosecution of claim of employment discrimination during administrative proceedings, since recovery would go to client in the first instance, though lawyer would ultimately benefit." (*Richards v. Reed* (5th Cir. 1980) 611 F.2d 545, headnote.) "Award of attorney fees under the Civil Rights Attorney's Fees Awards Act should have been made to the organization that provided the legal services, even though it was consistent with the statutory language to order the fees awarded to 'plaintiffs.'" (*Dennis v. Chang* (9th Cir. 1980) 611 F.2d 1302, 1303, headnote.)

"[S]tatutes authorizing attorney's fee awards were ... passed ... to enable litigants to obtain competent counsel worthy of the contest with the calibre of counsel available to their opposition and to fairly place the economic burden of that litigation. . . . The legislative history of the Attorney's Fees Awards Act echoes precisely the same sentiments. The purpose of these provisions in section 1988 is to produce fees which are adequate to attract competent counsel, but not produce windfalls to attorneys. . . . [¶] All of these Civil Rights laws depend heavily upon private enforcement and fee awards have proved an essential remedy. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate those rights in court. . . . If successful plaintiffs were routinely forced to bear their own attorney fees, few aggrieved parties would be in a position to advance the public interest by invoking the powers of the federal courts." (*Grooms v. Snyder* (N.D.Ind. 1979) 474 F.Supp. 380, 384.)

And: "Plaintiff appeared *in pro. per.* It is well settled that no attorney's fee is allowable in such circumstances." (*Bone v. Hibernia Bank* (N.D.Cal. 1973) 354 F.Supp. 310, 311); "In this case, there was no financial expenditure for an attorney's services. Hannon, probably due to his new-found expertise, chose to represent himself. However, he was not an attorney and could not provide attorney services. Had Congress wished to compensate non-attorneys for 'services' rendered on their own behalf in pressing their individual claims, it certainly could have done so." (*Hannon v. Security Nat. Bank* (9th Cir. 1976) 537 F.2d 327, 328-329; fn. omitted); "Cliff Davis [a prison inmate], proceeding pro se, appeals from a district court order denying him attorney fees under 42

U.S.C. § 1988 .... [Pars. omitted.] [¶] Davis is not represented by counsel on appeal and was not represented by counsel in the district court. He argues that under Section 1988 he is entitled to receive paralegal compensation at the rate of $25.00 per hour for his work in preparing his case. He further contends that the denial of attorney fees to pro se litigants contravenes the purpose of that statute. [¶] The legislative history of Section 1988 reveals that its purpose is not to compensate pro se litigants, but to provide counsel fees to prevailing parties in order to give private citizens a meaningful opportunity to vindicate their rights: 'In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, ... [they] must have the opportunity to recover what it costs them to vindicate these rights in court.' ... This section presupposes a relationship of attorney and client that is lacking in the instant case. The district court properly denied Davis' application for attorney fees." (*Davis* v. *Parratt* (8th Cir. 1979) 608 F.2d 717, 718.)

The case of *Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891 [160 Cal.Rptr. 124, 603 P.2d 41], where fees and costs were judicially awarded to a nonattorney representative of a consumer group, lends no aid to Dormio. The high court stated (pp. 913-914): "Nonattorneys are generally not permitted to participate in judicial proceedings; rather, with a few limited exceptions, a person must be licensed as an attorney before he can appear in court. In Public Utilities Commission proceedings, by contrast, the participants are not required to be licensed attorneys, and it is common for such persons to make appearances on behalf of others. The commission's own rules explicitly acknowledge this practice.... Moreover, even a brief perusal of the California Public Utilities Commission Reports demonstrates that appearances by nonattorneys comprise a substantial and important part of the practice before that body. We must infer that the commission believes such persons are competent to participate in its proceedings in a representative capacity. It follows that the cases relied on by the commission provide no justification for precluding nonattorneys who are permitted to appear in its proceedings from recovering reasonable fees for their services." (Fn. omitted.)

Manifestly Dormio was unentitled to attorney fees under the "private attorney general" doctrine or otherwise. The superior court did not err.

Our determination disposes of all of the issues presented by Dormio. It becomes unnecessary to consider his many other points and arguments.

Treating the matter before us as an appeal, the order denying Dormio attorney fees is affirmed; treated as an application for a writ of habeas corpus, the writ is denied.

Grodin, J., and Ragan, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.