[No. G001095. Fourth Dist., Div. Three. Jan. 6, 1986.]

EUGENE R. ATHERTON, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF ORANGE COUNTY,
Defendant and Respondent.

434

COUNSEL

Eugene R. Atherton, in pro. per., for Plaintiff and Appellant.

Adrian Kuyper, County Counsel, John R. Griset and R. Donald McIntyre, Deputy County Counsel, for Defendant and Respondent.

---

**OPINION**

**WALLIN, J.**—Eugene R. Atherton appeals from a superior court order denying his motion for attorneys' fees under section 1021.5 of the Code of Civil Procedure.[1]

In August of 1981, the Board of Supervisors of the County of Orange (County) approved an amendment to the Orange County general plan which, among other things, added certain corridors as proposed facilities to the transportation element of the plan. Atherton, a medical doctor, filed a pro se petition for writ of mandate in superior court challenging the amendment based on alleged noncompliance with the California Environmental Quality Act. His petition was denied. On appeal we affirmed the judgment insofar as it denied Atherton's request to set aside certification of the environmental impact report, but reversed with respect to the findings made in connection with that report. (*Atherton* v. *Board of Supervisors* (1983) 146 Cal.App.3d 346 [194 Cal.Rptr. 203].)

Shortly thereafter, Atherton filed a motion in superior court requesting attorneys' fees under section 1021.5 for successfully prosecuting the above mentioned litigation. His motion was denied and this appeal follows.

I

■ Atherton contends that under the "private attorney general" doctrine codified in section 1021.5, he is entitled to an award of attorneys' fees because he undertook the underlying litigation in an effort to vindicate important public interests. Section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest . . . ." The court below viewed a license to practice law as a prerequisite to the granting of attorneys' fees under section 1021.5. Because Atherton was unable to meet this threshold requirement, his request was denied without a determination as to whether the other requirements of section 1021.5 had been met. Similarly, we need only address this issue as we find it dispositive of the case before us.

---

[1]References hereinafter are to the Code of Civil Procedure unless otherwise specified.

An argument similar to Atherton's was rejected in *In re Dormio* (1981) 127 Cal.App.3d 788 [179 Cal.Rptr. 669]. There Dormio, a jail inmate, filed a pro se petition on behalf of himself and other inmates in superior court seeking improvements in the telephone accommodations afforded inmates. After extended hearings, some of the relief Dormio sought was granted. Thereafter, he filed a motion requesting attorneys' fees as a "private attorney general" under section 1021.5 and section 1988 of 42 United States Code.[2] After an extensive review of the purpose of attorneys' fees statutes generally and section 1021.5 in particular, the court stated, "It is clear that the statutes with which we are here concerned allow, in proper cases, orders for payment of reasonable attorney fees to the prevailing or successful party of a lawsuit. But just as clear is the implication that such party will thereby be reimbursed for attorney fees paid, or relieved of his personal obligation to pay them, or in any event that the attorney not go unpaid for the services resulting in public benefit . . . ." (*Id.*, at p. 792.)

Similar results have been reached under section 1988. " 'Plaintiff appeared *in pro. per.* It is well settled that no attorney's fee is allowable in such circumstances.' (*Bone* v. *Hibernia Bank* (N.D.Cal. 1973) 354 F.Supp. 310, 311); 'In this case, . . . [appellant, a law student], probably due to his new-found expertise, chose to represent himself. However, he was not an attorney and could not provide attorney services. Had Congress wished to compensate non-attorneys for "services" rendered on their own behalf . . . it certainly could have done so.' (*Hannon* v. *Security Nat. Bank* (9th Cir. 1976) 537 F.2d 327, 328-329; fn. omitted) . . . . 'The legislative history of Section 1988 reveals that its purpose is not to compensate pro se litigants, but to provide counsel fees to prevailing parties in order to give private citizens a meaningful opportunity to vindicate their rights . . . . [Section 1988] presupposes a relationship of attorney and client . . . .' (*Davis* v. *Paratt* (8th Cir. 1979) 608 F.2d 717, 718.)" (*In re Dormio, supra,* 127 Cal.App.3d at pp. 793-794.)

As observed by the court in *Pitts* v. *Vaughn* (3d Cir. 1982) 679 F.2d 311, the very use of the term " 'attorney fees' presupposes that the prevailing party has been represented by an attorney." (*Id.* at p. 312.) After examining various policy reasons for granting fee awards to litigants represented by counsel, but denying them to pro se litigants, the *Pitts* court concluded the congressional purpose behind allowing attorneys' fees "was not to provide an additional reward to *pro se* litigants but to enable litigants to obtain professional legal representation." (*Id.*, at p. 313.)

---

[2] 42 United States Code section 1988 provides in part: "In any action or proceeding to enforce a provision [of the Civil Rights Act], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

In our view, the decision to limit an award of attorneys' fees to individuals licensed to practice law is consistent with Business and Professions Code sections 6125 and 6126, which restrict the practice of law to active members of the State Bar and make the unauthorized practice of law a misdemeanor. Awarding Atherton attorneys' fees would grant him the status without the license.

Although our dissenting colleague, with a paucity of authority on his side, characterizes this licensing requirement as "irrelevant," his view has enjoyed little favor. Finding no support in California law, the dissent relies on two federal cases involving prisoners who filed pro se petitions for attorneys' fees under the Freedom of Information Act (5 U.S.C. § 552.) (*Cox v. United States Dept. of Justice* (D.C.Cir. 1979) 601 F.2d 1; *Marschner v. Dept. of State* (D.Conn. 1979) 470 F.Supp. 196.) Disapproving the reasoning of these cases, the court in *Barrett v. United States Customs Service* (E.D.La. 1980) 482 F.Supp. 779, emphasized, "The statute provides for an award of an *attorney* fee. There is no attorney involved in this case. Nor is there a fee involved. . . . [H]ad Congress wished to compensate nonattorneys for the time spent on their own behalf in litigating their claims, it could have and would have done so explicitly. Congress certainly knows how to encourage litigation, *pro se* and otherwise. Courts should not do so where Congress has not. To read the statute as [our dissenting colleague] urges is to ignore the statute's clear language." (*Id.,* at p. 780.)

■ Moreover, assuming *arguendo* that the dissent is correct in predicting that decisions such as ours and those cited herein provide attorneys with an *incentive* and nonattorneys with a *disincentive* to prosecute public interest lawsuits, so be it! We find nothing sinister in such an outcome. Here, Atherton's claim to attorneys' fees arises *solely* from the action to enforce "an important right affecting the public interest." (§ 1021.5.) Hence, Atherton has *not* "only represented himself" as the dissent suggests. For if he had, he would have no statutory basis to claim an entitlement to attorneys' fees. In order to invoke section 1021.5, Atherton is, of necessity, asserting the rights of the general public. As far as we know, a license is still required to represent anyone other than oneself in a court of law. And until the Legislature deems a legal education and/or license to practice law "needless," we find nothing disturbing in creating a disincentive to those tempted to so practice without a license.

## II

■ Finally, the cases cited by Atherton do not advance his cause. *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891 [160 Cal.Rptr. 124, 603 P.2d 41], involved an award of attorneys' fees

to a nonattorney representative of a consumer group. The Supreme Court clearly stated it was dealing with the *exception,* rather than the rule: "Non-attorneys are generally not permitted to participate in judicial proceedings; rather, with a few limited exceptions, a person must be licensed as an attorney before he can appear in court. [Fn. omitted.] In Public Utilities Commission proceedings, by contrast, the participants are not required to be licensed attorneys, and it is common for such persons to make appearances on behalf of others. The commission's own rules explicitly acknowledge this practice." (*Id.,* at pp. 913-914.)

■ In *Leaf* v. *City of San Mateo* (1984) 150 Cal.App.3d 1184 [198 Cal.Rptr. 447], plaintiff, an *attorney,* brought an inverse condemnation action on behalf of himself and his wife. His request for attorneys' fees was denied on the basis that no costs were "actually incurred" since he was acting on his own behalf. (*Id.,* at p. 1188.) The Court of Appeal found such reasoning illogical and was quick to point out: ". . . [the] commitment of time and skills—a lawyer's only 'stock-in-trade'—[have] a substantial economical value which realistically could have been available for other gainful application." (*Id.,* at p. 1189.)

Here, Atherton's "stock-in-trade" is more apropos to the medical, rather than the legal, profession. While we do not impugn his right to advance these noble causes, unless and until Dr. Atherton becomes a member of the bar, his time and energy are not compensable in the legal marketplace.

Judgment is affirmed. Respondent to recover costs on appeal.

Trotter, P. J., concurred.

**CROSBY, J.,** Dissenting.—Code of Civil Procedure section 1021.5 codifies the judicially developed "private attorney general" attorneys fee doctrine and "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney[s] fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) Because this provision is intended to encourage plaintiffs to assert their civil rights, attorneys fees are appropriate even if the successful plaintiff was represented by public interest lawyers and did not actually incur any legal expenses. (*Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 476 [201 Cal.Rptr. 424].)

Nevertheless, the majority here refuses to consider whether the litigation promoted a significant public policy simply because the successful plaintiff

was a nonattorney who represented himself. In my view, to interpret section 1021.5 as authorizing attorneys fees only where the prevailing party is represented by counsel does violence to the spirit and purpose of the statute.

Interpreting similar statutes, other courts have agreed. For example, the District of Columbia Circuit for the United States Court of Appeals and the United States District Court in Connecticut have awarded attorneys fees to nonlawyers. (*Cox* v. *United States Dept. of Justice* (D.C.Cir. 1979) 601 F.2d 1, 5-6; *Marschner* v. *Dept. of State* (D.Conn. 1979) 470 F.Supp. 196, 201 [attorneys fees under the Freedom of Information Act (5 U.S.C. § 552)].) And while the Fifth Circuit does not *yet* embrace the notion, a lone dissenting judge in that circuit has observed, "One cannot justifiably assert that an attorney representing himself is more entitled to a fee than a lay person representing himself. The courts are open to everyone—those who can afford to pay an attorney and those who have to do it themselves. The latter are just as entitled to be paid as the former are to be reimbursed." (*Lovell* v. *Alderete* (5th Cir. 1980) 630 F.2d 428, 438 (dis. opn. of Clark, J.) [again, an action under 5 U.S.C. § 552].) I agree.

And the grass closer to home could yet green. Our Supreme Court has held that a nonattorney who represents himself before the Public Utilities Commission is entitled to "compensation for his services" under the common fund theory. (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891 [160 Cal.Rptr. 124, 603 P.2d 41].) In reaching this conclusion, the majority engaged in a two-part analysis: First, the commission's own rules permit lay litigants to represent themselves *and others* in commission proceedings. Thus, the argument that only licensed attorneys could competently appear before the commission had no merit.

Second, the majority questioned "the logic of past decisions that do not allow an attorney to recover fees when he appears on his own behalf . . . . Although such an attorney does not pay a fee or incur any *financial* liability therefor to another, his *time spent* in preparing and presenting his case is not somehow rendered less valuable because he is representing himself rather than a third party. Accordingly, it would appear he should be compensated when he represents himself if he would otherwise be entitled to such compensation, absent a showing in a particular case that such an award would place his interests in conflict with those whom he represents." (*Id.*, at p. 915, fn. 13; see also *Renfew* v. *Loysen* (1985) 175 Cal.App.3d 1105 [222 Cal.Rptr. 413] [attorney representing himself entitled to fees under Civ. Code, § 1717] and *Leaf* v. *City of San Mateo* (1984) 150 Cal.App.3d 1184 [198 Cal.Rptr. 147] [attorney in pro. per. awarded fees in an inverse condemnation action under Code Civ. Proc., § 1036].)

In permitting the recovery of attorneys fees, the Supreme Court concluded it would be unfair not to reimburse the lay litigant who created the common fund for the benefit of so many others. This can be interpreted to mean the court considered the term "attorneys fees" to be descriptive not of the person who performs a particular service but of the service performed.

Here, Atherton, a nonattorney, represented only himself, as he had every right to do. There is no suggestion his action involved the unauthorized practice of law, and his stake in the outcome was no more or less than the millions of other residents of the state and county. Yet he invested considerable time and expense and, by his own account, virtually abandoned his medical practice to the endeavor when he was unable to locate an attorney willing to pursue the matter. Is he to be denied reimbursement solely on the basis that he has not been admitted to practice law before the courts of this state? I would hold not.

The notion that a nonattorney litigant who represents himself should be compensated for the loss of income he could generate if he pursued his regular occupation finds support in legal scholarship. One law review commentator, for example, has suggested that since attorneys fees provisions are enacted to remove the barriers of access to the court, it makes as much sense to award fees to the pro. per. lay litigant as to an attorney-litigant or attorney representing a litigant. (See Note, *Pro Se Can You Sue?: Attorney Fees for Pro Se Litigants* (1981-1982) 34 Stan.L.Rev. 659.)

The Second Circuit agrees in principle that one could be entitled to attorneys fees if pursuit of the action caused him "to forgo an opportunity to earn [his] regular income for a day or more in order to prepare . . . ." (*Crooker* v. *U.S. Dept. of the Treasury* (2d Cir. 1980) 634 F.2d 48, 49.) Fees were disallowed in *Crooker,* however, because the successful nonattorney litigant, a federal prisoner, could not establish any loss of income: "But we do not believe that Congress intended to permit an award of attorney's fees to *pro se* litigants like Crooker who have made no showing that prosecuting their lawsuits caused them to divert any of their time from income-producing activity. The Freedom of Information Act was not enacted to create a cottage industry for federal prisoners." (*Ibid.,* fn. omitted.)

The majority's interpretation of Code of Civil Procedure section 1021.5 provides attorneys with an incentive to prosecute public interest lawsuits, but needlessly couples this benefit with an unnecessary disincentive to lay litigants to represent themselves. I find no justification for this perversion of section 1021.5 into an "Attorneys' Unemployment Act."

Access to the courts by all litigants, even those who choose, or have no choice but, to represent themselves is to be fostered, not frustrated. The

Legislature has determined that litigants who succeed in ensuring enforcement of certain laws or vindicating particular fundamental rights should not bear the legal expense of so doing. In the vast majority of those cases qualifying for an award of attorneys fees, the litigant will have been represented by counsel. But there is no reason to consider the professional status of the individual achieving the socially beneficial result in determining whether his or her effort ought to be reimbursed. If the right vindicated is important enough to justify an award of fees to an attorney, a layman who is able to accomplish the same laudable end, despite the lack of a legal education, ought not to be penalized for that irrelevant reason.

A petition for a rehearing was denied January 24, 1986, and appellant's petition for review by the Supreme Court was denied March 26, 1986.