**ALASKA FEDERAL SAVINGS &
LOAN ASSOCIATION OF
JUNEAU, Appellant and Cross–Appellee,**

v.

**Carl J. BERNHARDT d/b/a Eaglewood
Communications, Appellee and
Cross–Appellant.***

Nos. S–2881, S–2955.

Supreme Court of Alaska.

Feb. 23, 1990.

Rehearing Denied March 13, 1990.

Richard Brown and Timothy A. McKeever, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellant and cross-appellee.

Carl J. Bernhardt, pro se.

Peter Giannini, Anchorage, for appellee and cross-appellant.

* Editor's Note: This opinion was originally published at 788 P.2d 31. It is published here as corrected.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

### I. FACTUAL BACKGROUND AND PROCEEDINGS

On June 17, 1985, Carl J. Bernhardt was sued by Alaska Federal Savings and Loan Association (AFSL). AFSL alleged that Bernhardt was personally operating a cable television system, d/b/a "Eaglewood Communications," in the Eaglewood Subdivision of Eagle River without authority from AFSL, which owned the subdivision. Bernhardt, who is not a lawyer, undertook to defend the suit on his own behalf. Bernhardt filed an answer and motion for summary judgment, the gravamen of which was that AFSL had sued the wrong party, and that the actual operator of the cable system was the Eagle River Development Corporation (ERDC), of which he was only the president. Bernhardt attached his affidavit to this effect and supported it with the subdivision plan for Eaglewood, filings in a connected bankruptcy case listing the cable system as an asset of ERDC, and a copy of a "registration of business name" form, filed with the Department of Commerce and Economic Development pursuant to AS 10.35.050, showing that ERDC (not Bernhardt) had taken the trade name of "Eaglewood Communications" to operate the cable system.

Before Bernhardt's summary judgment motion could be ruled on, he and AFSL stipulated to stay the suit "pending a determination as to whether or not the automatic stay" in a bankruptcy case against ERDC would affect the suit against him.

The case lay dormant until April 29, 1987, when the superior court sent notice to AFSL threatening to dismiss the suit for want of prosecution. Civil Rule 41(e). AFSL opposed dismissal on the ground that it had been conducting discovery in ERDC's bankruptcy case to determine exactly to whom the cable system belonged, ERDC or Bernhardt. Bernhardt filed a memorandum in support of dismissal, attached to which was the affidavit of Peter W. Giannini, ERDC's attorney in the bankruptcy case. Giannini averred that AFSL had discovered no evidence suggesting that Bernhardt owned or claimed to own the cable system. Bernhardt called for "appropriate" sanctions against AFSL's counsel for their opposition to a Civil Rule 41(e) dismissal. The superior court did not dismiss the case.

Six weeks later AFSL reversed its position 180 degrees and moved to dismiss the case against Bernhardt. The ground asserted for dismissal was the same as had been asserted by Bernhardt throughout: that "in all likelihood the cable system is operated by ERDC." AFSL sought to justify its suit against Bernhardt by noting that Bernhardt had entered into transactions as president of "Eaglewood Communications," the d/b/a of the cable system, prior to the filing of the complaint. This allegedly confused AFSL, which believed "Eaglewood Communications" was a mere alias of Bernhardt, not checking to see if the name was a registered trade name or to whom it was registered. However, AFSL admitted that Bernhardt, despite apparently resisting previous discovery efforts, was deposed on October 26, 1986 and testified and produced more supporting documents tending to show that ERDC in fact operated the cable system, apparently to AFSL's satisfaction. There is no suggestion in the record that AFSL learned anything more concerning ownership of the cable system between its receipt of the lack of prosecution notice and its own motion to dismiss.

In response to AFSL's motion to dismiss, Bernhardt renewed his motion for summary judgment, and sought costs, attorney fees, and Civil Rule 11 sanctions against AFSL. Bernhardt's Civil Rule 11 arguments focused on the filing of the initial complaint itself, counsel's failure to concede to Bernhardt's summary judgment motion in light of the attached exhibits showing that ERDC owned the cable system, and AFSL's opposition to dismissal for failure to prosecute in light of the information in their possession at that time.

The superior court denied the motion for sanctions under Civil Rule 11, concluding that it did not think it could "make adequate findings to support" the sanctions requested, despite noting that counsel's actions in this case were "borderline." It concluded, however, that "there is no authority in Alaska that specifically precludes a court from entering an award of attorney's fees in a case that's litigated by a pro per, defendant or plaintiff, under the same circumstances which it would be litigated by a lawyer on behalf of that person ... for whose service the litigant would be compensated." Accordingly, the court ordered an award of costs and attorney fees against AFSL.[1]

AFSL appeals the award of costs and attorney fees; Bernhardt cross-appeals the denial of sanctions under Rule 11.

## II. DISCUSSION

### A. THE SUPERIOR COURT ERRED BY AWARDING A NON–ATTORNEY PRO SE LITIGANT ATTORNEY FEES.

The question of whether prevailing lay pro se litigants may recover attorney fees is a question of first impression in this state.[2] We adopt the rule which is most persuasive in light of precedent, policy and reason. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

The common law did not permit recovery of attorney fees; rather, the basis for such recovery lies in the adoption of Alaska Rule of Civil Procedure 82.[3] McDonough v. Lee, 420 P.2d 459, 460 (Alaska 1966). The plain language of Civil Rule 82 authorizes only partial reimbursement of attorney fees. It says nothing concerning reimbursement of expenditures made by non-attorneys. "Attorney's fees" presupposes attorney representation. E.g., Atherton v. Board of Supervisors of Orange County, 176 Cal. App.3d 433, 222 Cal.Rptr. 56, 57 (1986).

Although the plain language of a rule is not the end of interpretive analysis, it is entitled to some weight. See Ward v. State, 758 P.2d 87, 89–90 n. 5 (Alaska 1988). Admittedly, there are policy arguments both for and against allowing a pro se litigant to recover attorney fees.

■ Policy reasons to deny lay pro se litigants attorney fees include: (1) the difficulty in valuing the non-attorney's time spent performing legal services, i.e., the problem of over compensating pro se litigants for "excessive hours [spent] thrashing about on uncomplicated matters," Culebras Enter. Corp. v. Rivera Rios, 660 F.Supp. 540, 546 (D.P.R.1987) vacated on other grounds, 846 F.2d 94 (1st Cir.1988); (2) the danger of encouraging frivolous filings by lay pro se litigants and creating a "cottage industry" for non-lawyers, see Crooker v. United States, Dep't of the Treasury, 634 F.2d 48, 49 (2nd Cir.1980); (3) our view that the express language of Civil Rule 82 specifying "attorney's fees" is not easily susceptible to a construction allowing awards to non-attorneys, see also Hannon v. Security Nat'l Bank, 537 F.2d 327, 328–29 (9th Cir.1976); and (4) the argument that, in cases where a litigant incurs no actual fees, the award amounts to a penalty to the losing party and a windfall to the prevailing one, Crooker v. United States Parole Comm'n., 632 F.2d 916, 921 (1st Cir.1980), vacated on other grounds, 469 U.S. 926, 105 S.Ct. 317, 83 L.Ed.2d 255 (1984). See also, Note, Pro Se Can You Sue?: Attorney Fees for Pro Se Litigants, 34 Stan.L.Rev. 659, 666 (1982). We find these policy reasons more persuasive than

1. The court awarded Bernhardt $5,000 in attorney fees and $1,316.75 in costs. He had requested $6,500 in attorney fees based on an estimated 68.5 hours of legal work.

2. We have previously allowed prevailing attorney pro se litigants attorney fees for the time spent performing legal tasks, as distinguished from time spent as a client in the matter. Sherry v. Sherry, 622 P.2d 960, 966 (Alaska 1981). Neither party asks us to reconsider Sherry; thus

we decline to do so. At least one recent case has called the fairness of differing approaches into question, however. Swanson & Setzke, Chtd. v. Henning, 116 Idaho 199, 201–203, 774 P.2d 909, 911–13 (App.1989).

3. AS 09.60.010 provides that:
   The supreme court shall determine by rule or order the costs, if any, that may be allowed a prevailing party in a civil action....

those put forth by the few courts which have allowed fees to lay *pro se* litigants. *E.g., Holly v. Acree*, 72 F.R.D. 115, 116 (D.C.1976) (arguing the economic detriment to lay *pro se* litigants involved in litigation).[4]

## B. THE SUPERIOR COURT ERRED IN CALCULATING GIANNINI'S FEES AS COSTS.

The superior court awarded Bernhardt $1,316.75 in costs. Among those costs was a charge of $687.50 for consulting fees charged by Peter Giannini, an attorney. AFSL objects, contending that such expenditures must be compensated, if at all, not as "costs" under Civil Rule 79, but as "attorney's fees," for which a prevailing party may be only "partially compensated" under Civil Rule 82.

■ We agree. Attorney fees are not recoverable under Civil Rule 79, but only under Civil Rule 82. *E.g., State v. University of Alaska*, 624 P.2d 807, 817 (Alaska 1981). On remand, the superior court should recalculate under Civil Rule 82 the portion of the cost award attributable to Giannini's services.

■ The remainder of the superior court's cost award was for paralegal services and document production. Such expenses are properly characterized as costs and may be awarded under Civil Rule 79. *CTA Architects of Alaska, Inc. v. Active Erectors & Installers, Inc.*, 781 P.2d 1364, 1367 (Alaska 1989).

## C. THE SUPERIOR COURT DID NOT ERR BY DENYING BERNHARDT CIVIL RULE 11 SANCTIONS AGAINST AFSL.

### 1. The Complaint.

■ Bernhardt's first Civil Rule 11 allegation concerns the purportedly bad faith

filing of the complaint, which occurred on June 17, 1985, before the 1986 amendment to Civil Rule 11.[5] Prior to December 15, 1987, Civil Rule 11 provided for sanctions only if a pleading was signed "with the intent to defeat the purposes of the rule." *Sanuita v. Common Laborer's and Hod Carriers Union of Am.*, 402 P.2d 199, 200 (Alaska 1965). The purpose of the rule was to insure the good faith of counsel; it was aimed at deterring pleadings made in bad faith, for purposes of delay, or without good grounds to support it. *Id.* at 200 n. 2. The old version of the rule limited sanctions to cases of willful violations, and did not apply to mere oversights. *Id.* at 201.

■ The court's refusal to sanction counsel under the old rule for filing the complaint is subject to review under an abuse of discretion standard. *Id.* We reverse for abuse of discretion only when left with a "definite and firm conviction on the whole record that the trial judge has made a mistake." *E.g., Gregor v. Hodges*, 612 P.2d 1008, 1010 (Alaska 1980) *(per curiam )*.

We are not left with a definite and firm conviction of error. There was some ambiguity at the time the complaint was filed as to who the owner of the cable system was.[6]

### 2. Failure to act affirmatively and dismiss the complaint.

■ Several of Bernhardt's Civil Rule 11 allegations concern counsel's purportedly improper failure to concede error and affirmatively act to dismiss the case after receiving substantial evidence indicating that Bernhardt had been improperly sued. Neither the past nor the present version of Civil Rule 11, however, reaches omissions. Both concern only the veracity and proprie-

---

**4.** Some commentators have supported the awarding of attorney fees on the ground that it discourages unreasonable suits and settlement positions. *E.g.,* Hicks, *Statutory Damage Caps Are an Incomplete Reform: A Proposal for Attorney Fee Shifting in Tort Actions*, 49 La.L.Rev. 763, 791 (1989). Civil Rule 11 in part serves, however, to discourage frivolous litigation, while Civil Rule 68 operates to discourage unreasonable settlement positions.

**5.** Civil Rule 11 has again been amended, effective January 15, 1990. The most recent amendment deletes the last sentence, mandating sanctions for a violation.

**6.** All that AFSL knew at the time the complaint was filed was that Bernhardt had several years previously been president of "Eaglewood Communications, Inc."

ty of purpose of affirmative representations (pleadings, motions, or other papers) made by counsel. *See* Alaska R.Civ.P. 11. This contention lacks merit.

### 3. Opposing the court's motion to dismiss the complaint for lack of prosecution.

Timothy McKeever, one of AFSL's attorneys, signed a document filed with the court on April 24, 1987, opposing dismissal of the case for lack of prosecution. The date of this action brings it within the ambit of the revised version of Civil Rule 11, effective December 15, 1986.

> The rule then provided, in pertinent part: The signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless expense in the cost of litigation.

Alaska R.Civ.P. 11.

■ The "new" rule no longer strictly requires willful conduct or subjective bad faith to impose sanctions; "[t]he key in determining whether sanctions should be imposed is whether there was a reasonable basis for the attorney's signature." 5 C. Wright & A. Miller, *Federal Practice and Procedure*, Civil § 1334 (Supp.1987); Advisory Committee Note, 97 F.R.D. 165, 198 (1983); *see also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986). "There is no [longer] room for a pure heart, empty head defense under Rule 11." Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 187 (1985). This inquiry is to be made based on what was reasonable for the attorney to believe at the time the paper was submitted. Advisory Committee Note, 97 F.R.D. at 199; *Golden Eagle*, 801 F.2d at 1537.

■ Under the new Civil Rule 11, a trial court's imposition or non-imposition of sanctions remains subject to review only for abuse of discretion. *Keen v. Ruddy*, 784 P.2d 653, 658–59 (Alaska 1989).

■ We do not believe that the superior court abused its discretion. On the one hand, the motion opposed dismissal for lack of prosecution. McKeever and other counsel had conducted some minimal relevant discovery, although only in a connected bankruptcy case. On the other hand, McKeever then had in his possession evidence tending to dispel any confusion about who actually owned the cable company. It is possible to reasonably infer from the evidence in his possession and his reversal of position about six weeks later that he knew opposing the trial court's dismissal for lack of prosecution was unnecessary. It is also possible, however, to reasonably infer that no improper purpose was present, given the initial confusion and a limited amount of evidence received after the complaint was filed suggesting that the cable company was run by the "developer," and that two employees believed that "developer" meant Bernhardt. Because there are conflicting reasonable inferences that could be drawn, we will defer to the trial court.

### III. CONCLUSION

The judgment of the superior court is AFFIRMED in part, REVERSED in part, and the case REMANDED for further proceedings consistent with this opinion.

BURKE, J., concurs.

BURKE, Justice, concurring.

I concur in the opinion of the court, but I am of the view that the decision in this case requires us to reconsider our holding in *Sherry v. Sherry*, 622 P.2d 960, 966 (Alaska 1981). To the extent that it creates a double standard, for the award of attorney's fees to lawyer and non-lawyer *pro se* litigants, *Sherry* should probably be overruled. I would decide this question after instructing the parties to brief the issue.