Benjamin H. SINGER, Plaintiff Below,

v.

CREOLE PETROLEUM CORP. et al.,
Defendants Below, Appellees.

Supreme Court of Delaware.

Oct. 10, 1973.

William Prickett of Prickett, Ward, Burt & Sanders, Wilmington, and Benedict

Wolf, Donald N. Ruby and Victor P. Muskin of Wolf, Popper, Ross, Wolf & Jones, New York City, of counsel, for plaintiff below, appellant.

Robert H. Richards, Jr. and Charles F. Richards, Jr., of Richards, Layton & Finger, Wilmington, and Arthur H. Dean and Roy H. Steyer of Sullivan & Cromwell, New York City, of counsel, for Exxon Corp. and Esso International, Inc., defendants below, appellees.

William S. Potter and Blaine T. Phillips of Potter, Anderson & Corroon, Wilmington, and James F. Dwyer of Satterlee & Stephens, New York City, of counsel, for Creole Petroleum Corp., defendant below, appellee.

Before HERRMANN, C. J., CAREY, J., and McNEILLY, Judge.

HERRMANN, Chief Justice:

In this stockholder's derivative action, the plaintiff appeals from the Chancery Court's (1) grant of summary judgment in favor of the defendant corporations as to certain charges in the complaint, and (2) dismissal of the remainder of the charges as "sham" under Chancery Rule 11 Del.C. Ann.* The opinion below is reported at 297 A.2d 440. Reference is made thereto for factual background, the basic contentions of the parties, and the nomenclature and interrelationship of the parties.

I.

A threshold contention of the plaintiff upon this appeal is that he was not afforded the opportunity to conduct discovery in the action; that, therefore, it was error to grant summary judgment against him as to any of the charges in the complaint. The plaintiff cites Schoenbaum v. Firstbrook, 2 Cir., 405 F.2d 215 (1968); Subin v. Goldsmith, 2 Cir., 224 F.2d 753 (1955); and United Industrial Corp. v. Nuclear Corp. of America, S.D.N.Y., 43 F.R.D. 30 (1967).

■ The plaintiff lacks standing to complain of lack of discovery. It appears that the plaintiff was never prevented by the Trial Court from going forward with discovery. He never applied to the Trial Court for access to discovery; and the Trial Court never ruled against him in this regard.

It appears that the plaintiff noticed depositions early in the proceedings, but that he voluntarily stayed the taking of depositions pending completion of the defendants' interrogatories; and that he never renewed his notices. It further appears that the plaintiff made informal request upon the defendants for production of documents, but that he voluntarily withdrew the request upon being advised of the defendants' intent to move for summary judgment. Thereafter, the plaintiff made no further discovery efforts or application in this action. At oral argument here, the plaintiff's excuse for not pressing for discovery was that "it was no use" in view of the defendants' motions.

It is manifest, we think, that the authorities relied upon are inapposite and that the plaintiff has no ground for complaint at this stage regarding his discovery opportu-

---

* Chancery Rule 11 is as follows:

"Even pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address. Except when otherwise specifically provided by statute or rule, pleadings need not be verified or accompanied by affidavit. *The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action.* Similar action may be taken if scandalous or indecent matter is inserted." (Emphasis supplied)

nities and rights under the applicable Rules of Court.

## II.

The plaintiff asserts that the Trial Court erred in granting summary judgment in favor of the defendants upon the charges relating to Creole's "demand account" with Jersey. The plaintiff contends that it was error to hold that these claims are barred by the 1958 judgment of the Chancery Court in Mencher v. Burr, C.A. No. 673 and the release in that case. We agree that it was error to so hold.

Since it is obvious that this ruling was based upon the doctrine of *res judicata*, it becomes necessary to look closely at the *Mencher* litigation:

The complaint in *Mencher* challenged certain loans made by Creole to Jersey during the period 1950–1957. It was there claimed: that Jersey paid Creole inadequate rates of interest on the loans; that Creole should have invested the funds in the operation and expansion of its own business; that Jersey should account for profits and damages sustained by Creole as the result of the loans; and that Jersey should have been required to pay compound interest on a quarterly rather than an annual basis.

A settlement was reached in *Mencher*. The Court approved the settlement and the judgment with which we are here concerned was entered upon that basis. The Stipulation of Settlement provided that Jersey pay Creole a sum equal to the difference between (1) interest compounded quarterly on Creole funds in the possession of Jersey from 1950 to 1957, and (2) interest thereon compounded annually. The Stipulation of Settlement contained no reference to loans by Creole to Jersey subsequent to 1957; and there was no provision therein for procedures to be followed regarding loans or methods to be used in computing interest rates thereon after 1957.

■ In the instant case, on the other hand, the complaint refers to loans made by Creole to Jersey during the period 1960–1969. The complaint here alleges that Jersey paid Creole inadequate rates of interest on the loans made during that period; and that Creole to its detriment was deprived by Jersey of control over the use of the funds during that period. There is no claim in the instant case regarding loans made by Creole to Jersey during the 1950–1957 period involved in the *Mencher* case.

We think it clear, from this comparison of the claims asserted in *Mencher* and the claims asserted here, that the *Mencher* judgment is not a bar. The claims asserted in the instant case were not in existence when the *Mencher* judgment was entered, arising as they do from transactions, circumstances, and conditions which had not then yet occurred.

In *Mencher*, if the case had gone to trial, the plaintiff would have been obliged to offer evidence to show what interest rates were paid by Jersey to Creole on the funds loaned during the period 1950–1957, and those interest rates would have been compared with bank prime rates, the money market, and the rate of return Creole received upon the funds invested by it in its operations during that period. In the instant case, on the other hand, the plaintiff will be obliged to show the interest rates paid by Jersey to Creole on funds loaned during the period 1960–1969, and those interest rates must be compared with bank prime rates, the money market, and the rate of return Creole received upon its investments during the latter period.

■ Thus it is clear that the claims, the transactions, and the evidence required to sustain the claims asserted, are substantially different in each case. While the 1958 *Mencher* judgment precludes claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not then exist and which could not have

possibly then been sued upon. A judgment entered upon a settlement is *res judicata* only as to claims which were actually litigated in the action in which the judgment was entered. Petrucci v. Landon, Del. Super., 9 Terry 491, 107 A.2d 236 (1954); Tyndall v. Tyndall, Del.Supr., 238 A.2d 343 (1968); Winkler v. Balentine, Del.Supr., 254 A.2d 849 (1969).

Upon this issue, the Trial Court cited Engelhardt v. Bell & Howell Co., 8 Cir., 327 F.2d 30 (1964). In *Engelhardt,* it appears that the claims made in the later action arose out of the same wrongful transaction (cancellation of a franchise) as did the claims in the earlier action; that the same evidence would have been required to sustain the claims in both cases; and that the plaintiff there was seeking, as further damages, claims for additional lost profits which could have been raised in the earlier action. The factual and legal distinctions between *Engelhardt* and the instant case are manifest. We have considered other cases cited by the defendants as to this facet of the case: Straus v. American Publishers' Ass'n, 2 Cir., 201 F. 306 (1912); F. L. Mendez & Co. v. General Motors Corp., 7 Cir., 161 F.2d 695 (1947); United States v. United States Gypsum Co., D.D.C., 51 F.Supp. 613 (1943). None of those cases, in our view, stands for the proposition that a judgment can operate as a bar to a later suit on then non-existent and subsequently-occurring transactions.

We conclude that the doctrine of *res judicata* is inapplicable here and that the *Mencher* judgment is not a bar in the instant case.

Accordingly, the summary judgment as to the "demand account" charge must be reversed.

### III.

The plaintiff contends that the Trial Court erred in granting summary judgment upon the claims that Jersey wrongfully caused Creole to declare and pay excessive dividends and wrongfully prevented Creole from expanding its exploration, production, and refining activities in places outside Venezuela. The Trial Court found Sinclair Oil Corporation v. Levien, Del.Supr., 280 A.2d 717 (1971) controlling; that the law therein established required summary judgment for the defendants upon the dividend and expansion issues. See 297 A.2d at 442. We agree.

Upon this facet of the case, the Trial Court had before it for the plaintiff only the complaint and an affidavit of plaintiff's counsel. Upon that record, the Trial Court correctly decided that there are no genuine issues of material fact to be tried before concluding that *Sinclair* requires summary judgment in favor of the defendants upon the dividend and expansion issues.

The plaintiff relies upon the "unique need" language in *Sinclair* (280 A.2d at 722) as an escape from the application of the business judgment rule to the expansion policy of Jersey. In support of that position, there is only the affidavit of plaintiff's counsel asserting sharp increase in tax rates and possible takeover by the Venezuelan government after 1984. Such assertions do not establish the "unique need" mentioned in *Sinclair* as a possible though non-existent reason for taking the expansion policy there involved out of the business judgment rule.

As to the assertion of wrongful limitation of refining facilities, which the plaintiff points out was not involved in *Sinclair,* there is no showing here of any appropriation by Jersey of a Creole opportunity for refinery expansion. The fact that Creole had been under a long-standing contract with another subsidiary of Jersey, for the refining of much of Creole's production, did not constitute "self dealing" as to the refinery expansion issue. The business judgment rule of *Sinclair* applies to the refinery expansion issue just as to the other expansion issues in the case.

Accordingly, as to the dividend and expansion issues, the judgment below is affirmed.

### IV.

■ The Chancery Court dismissed various claims and charges in the complaint as "sham" under Chancery Rule 11. See 297 A.2d at 442–443. By supplemental opinion and order, the dismissal was made to "operate as a dismissal upon the merits and with prejudice with respect to plaintiff" because he showed "no good ground" for the allegations in question. Otherwise stated, the Trial Court dismissed the claims with prejudice under Rule 11 because they were found during the course of the litigation to be "groundless". This, we hold, was an erroneous application of Rule 11.

The Rule 11 judgment below was apparently based upon Halpern v. Barren, Del. Ch., 272 A.2d 118 (1970). We disagree with the concept of Rule 11 established in *Halpern* and followed in the instant case.

. Rule 11 deals with the signing of pleadings. A "sham and false" pleading, subject to being stricken under Rule 11, is one which the attorney has signed in violation of his certification, evidenced by his signature, that to the best of his knowledge, information, and belief there is "good ground" to support the pleading; it is a pleading "signed with intent to defeat the purpose" of Rule 11. The good faith of the attorney in signing the pleading is the issue and the test. The sufficiency of the pleading, and the adequacy of the evidence available to support it, are the subject of other Rules.

In the instant case, it appears that, prior to filing of the action, plaintiff's counsel conducted a reasonable investigation into the subject matter of the claims stricken as "sham", by exploring all sources of public information available to him before suit was filed. There is no indication in the record before us to warrant the conclusion that the Rule 11 certification of the plaintiff's attorneys, evidenced by their signatures, was anything but true. There was no finding below of lack of good faith on the part of plaintiff's attorneys in signing the complaint. There was no finding that, at the time of their signing of the complaint, they knew that "good grounds" did not exist for the allegations contained therein. There is no suggestion that, at the time of the signing, the plaintiff's counsel knew that any of the charges set forth in the complaint was false.

■ We hold that the "good ground" provision of Rule 11 is to be measured by subjective standards at the time of the signing of the pleading. In our view, the primary function and purpose of Rule 11 is to test the conduct of counsel. As a collateral matter only, the Rule serves to narrow and limit the issues in the case.

It follows that no "sham and false" pleading, subject to being stricken under Rule 11, has been demonstrated here. Moore's Federal Practice (2d Ed.) § 56.-02[2]; Lau Ah Yew v. Dulles, 9 Cir., 236 F.2d 415 (1956); Murchison v. Kirby, S. D.N.Y., 27 F.R.D. 14 (1961); Freeman v. Kirby, S.D.N.Y., 27 F.R.D. 395 (1961); Brand v. Tisch, S.D.N.Y., 253 F.Supp. 122 (1966); American Automobile Association v. Rothman, E.D.N.Y., 104 F.Supp. 655 (1952); Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

Accordingly, we hold it was error to strike as "sham and false" the charges and claims dismissed below under Rule 11. The judgment of dismissal under Rule 11 is, therefore, reversed.

\* \* \*

The judgment below is modified, and the cause remanded for further proceedings, in accordance herewith.