804 P.2d 420

**Donna CHERRYHOMES, Plaintiff–Appellant,**

v.

**Donald George VOGEL, Defendant–Appellee.**

In the Matter of Rule 11 Sanctions Against Attorney Tom CHERRYHOMES, Attorney for Petitioner.

Hon. James L. Shuler, Real Party in Interest.

No. 12106.

Court of Appeals of New Mexico.

Dec. 6, 1990.

Hal Stratton, Atty. Gen., Michael Dickman, G.T.S. Khalsa and Elizabeth Staley, Asst. Attys. Gen., Santa Fe, for Hon. James L. Shuler.

Tom Cherryhomes, Carlsbad, M.J. Collopy, Hobbs, for Tom Cherryhomes.

## OPINION

BIVINS, Judge.

Tom Cherryhomes, attorney for petitioner, appeals the district court's order imposing Rule 11 (SCRA 1986, 1–011 (Cum. Supp.1989)) sanctions for willfully failing to disclose, at the time he submitted a petition on behalf of Donna Cherryhomes, his wife, for custody of her child by a former marriage, the pendency of an action in the state of Oregon involving the same issue. Although Cherryhomes raises a number of issues on appeal, we find one dispositive. Where, as here, the sanction awarded is based on what the attorney failed to disclose to the court, as opposed to a defect in his pleading, is Rule 11 implicated? We hold it is not and reverse.

In order to understand the basis for the sanctions awarded, it is helpful to first briefly relate proceedings brought in the state of Oregon. In June 1989, Donald Vogel brought an action in Oregon to enforce overdue child support payments against his former wife, Ms. Cherryhomes. At the time, Mr. Vogel had custody of the couple's children and had been residing in Oregon for a number of years. Ms. Cherryhomes cross-complained in the Oregon case for a change of custody.

A hearing was held on motions before the Honorable Milo Pope, Oregon Circuit Court Judge, on November 28, 1989. Ms. Cherryhomes and her current husband, Cherryhomes, were present at that hearing and represented by Oregon counsel. Ms. Cherryhomes testified at the hearing, at the conclusion of which Judge Pope announced that custody would remain with Mr. Vogel.

Before an order was entered in the Oregon case, however, Cherryhomes, acting as attorney for his wife, visited in chambers with the Honorable James L. Shuler, District Court Judge in the Fifth Judicial District Court of the State of New Mexico. One week later, on December 14, 1989, Cherryhomes filed a petition, which was assigned to Judge Shuler, asking for temporary custody and for permanent custody of one of the two children. In the petition that he signed on behalf of his wife, Cherryhomes alleged that "[n]o other state has jurisdiction of this matter." Ms. Cherryhomes verified the petition and swore that the statements therein were true and correct to the best of her knowledge, information, and belief. Cherryhomes presented the district court judge with the petition and a proposed order that similarly stated that "[n]o other state has jurisdiction to hear this matter." Cherryhomes testified that, at this time, he informed the district judge of the facts regarding the Oregon hearing. The judge signed the order granting temporary custody to Ms. Cherryhomes and setting a hearing to determine permanent custody.

On December 20, 1989, Judge Pope called the district court judge and informed him that the custody matter was pending in his Oregon court. The New Mexico district court judge, on his own motion, entered an order on December 22, 1989, staying any further proceedings in the New Mexico case. In that order, the judge recited that, at the time the petition was presented, he was unaware that on November 28, 1989, Judge Pope had conducted a hearing which had not been finalized and had only become

aware of that fact after receipt of a call from Judge Pope on December 20, 1989.

On January 4, 1990, the district court judge gave notice to Cherryhomes of a hearing scheduled for January 9, 1990, to consider sanctions. Cherryhomes appeared at that hearing with separate counsel and offered testimony and argument relating to the reasons for the allegations in the petition which he had signed. Following the hearing, the district court judge entered his order that Cherryhomes serve forty-eight hours in the Eddy County jail as a sanction for violating Rule 11. This appeal followed.[1]

In answering the question posed, we first examine Rule 11 and its requirements. We also look at the development of Federal Rule of Civil Procedure 11, which before the 1983 amendment contained language similar to New Mexico's Rule 11.[2] We do so because of difficulties encountered by federal courts in interpreting Federal Rule 11 prior to the 1983 amendment and to alert our supreme court should it wish to reexamine our own Rule 11. We then determine whether the circumstances present in this case constitute a violation. We conclude they do not.

Rule 11, as it applies to cases filed on or after August 1, 1989, provides:

█ Every pleading, motion and other paper of a party represented by an attorney, [sic] shall be signed by at least one attorney of record in the attorney's individual name, whose address and telephone number shall be stated. [2] A party who is not represented by an attorney shall sign the party's pleading, motion or other paper and state the party's address and telephone number. [3] Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. [4] The rule in equity that the averments of

an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. [5] *The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.* [6] If a pleading, motion or other paper is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading or other paper had not been served. [7] If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. [8] *For a willful violation of this rule an attorney or party may be subjected to appropriate disciplinary or other action.* [9] Similar action may be taken if scandalous or indecent matter is inserted. [Emphasis added.]

The highlighted portions of the rule (sentences 5 and 8) have not heretofore been interpreted by the appellate courts of this state.[3]

Sentence number 5 of the rule, which requires the attorney's signature be treated as a certificate, contains three elements. First, the attorney's signature to a pleading, motion, or other paper constitutes certification he has read it. Second, the signature certifies that, to the best of the signer's knowledge, information, and belief, there is "good ground" to support what is set forth in the pleading, motion, or other paper. Third, the signer is certifying that it is not interposed for delay. Sentence number 6 allows for striking the pleading, motion, or other paper if signed with intent to defeat the purpose of the rule. Since

---

1. The notice of appeal was taken by Mr. Cherryhomes in his own name. *Cf. Dona Ana Sav. & Loan Ass'n, F.A. v. Mitchell,* N.M. (Ct.App.1990) (No. 12,051).

2. *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1331, at 8 (2d ed. 1990) [hereinafter "Wright"], for history of Federal Rule 11.

3. *But see Stanton v. Gordon Jewelry Corp.,* 108 N.M. 160, 768 P.2d 888 (1989) (reviewing court referred attorneys to disciplinary board for proceedings regarding Rule 11 violations).

that sanction was not utilized here, we are not concerned with it. The order of the district court judge attempted to employ sentence number 8, which authorizes "appropriate disciplinary or other action" for "willful" violation of the rule.

Because of potential difficulties that may be encountered in applying New Mexico's Rule 11, we believe it useful to briefly examine the federal experience with its similar rule before ·the 1983 amendment.

Pre–1983 Federal Rule 11 was seldom invoked, due to confusion over what circumstances triggered disciplinary action and the range of available and appropriate sanctions. 2A J. Moore & J. Lucas, *Moore's Federal Practice* ch. 11.01[4], at 11–4 (2d ed. 1989) [hereinafter "Moore"]. In explaining the difficulty in establishing that a certification is wrong, Wright and Miller state,

> The original rule required that the attorney's signature be treated as a certificate, but this certification requirement, which had three elements, was particularly ineffective. First, the element of the certification that the attorney had read the pleading basically was meaningless in actual practice. Second, a subjective standard had evolved as the test of the "good grounds" element of the certification and it had proven to be virtually unenforceable. Third, the wording of the original rule limited malfeasance to delay, which meant that other improper motivations for violating the certification requirement were immune under a strict reading of the rule's language. Moreover, the original rule's sanction provisions were useless as a practical matter. They called for a striking of the offending document, which was too draconian, or, in the case of a "willful" violation, "appropriate disciplinary action," which was too vague to be meaningful.

5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1331, at 11–12 (2d ed. 1990) [hereinafter "Wright"] (footnotes omitted).

The 1983 amendment to the federal rule gave courts explicit authority to impose sanctions against the attorneys, the parties, or both for violations of Federal Rule 11. Wright, *supra*, § 1331, at 22 n. 57; Moore, *supra*, ch. 11.01[4], at 11–4. Thus, under the amendment, sanctions are appropriate if papers are submitted for any improper purpose. Moore, *supra*, ch. 11.-02[2], at 11–12 nn. 6, 7. We now turn to the pivotal question of whether Rule 11 formed the basis of the district court judge's sanction.

■ Whether the pleadings signed by Cherryhomes constituted a violation of Rule 11 was not the basis for the district court judge's decision. It is clear the sanction imposed was based not on what Cherryhomes alleged in the pleading but rather on his failure to disclose information at the time he presented the pleading. The order imposing sanctions states,

> THE COURT FINDS that Mr. Cherryhomes *willfully failed to disclose* to the Court that an action regarding custody of the same child was pending in the Circuit Court of Grant County, Oregon, on December 14, 1989, when he submitted the Petition in this pending action; and that his failure to disclose this information violated the provisions of New Mexico Rule of Civil Procedure 1–011. [Emphasis added.]

In particular, the district court judge did not make any finding that Cherryhomes failed to have "good ground" to support allegations in his pleadings. On the contrary, the district court judge stated that if he had been given all the facts, he might have agreed with Cherryhomes on the jurisdictional issue. Thus, it is apparent that the district judge was not basing his ruling upon a finding that Cherryhomes had made false or misleading assertions in bad faith in his pleadings.

We conclude that since the district court did not rely on Cherryhomes' pleadings but rather his failure to disclose, sanctions can-

not be awarded under Rule 11 in this case. We express no opinion as to whether Cherryhomes' conduct may have justified sanctions on other grounds.

## CONCLUSION

Because we conclude that there was no Rule 11 violation, we are compelled to reverse.

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.