808 P.2d 955

Joe P. RIVERA, a married man as his sole and separate estate, and as successor in interest to Jose Miguel Rivera, deceased, Plaintiff–Appellant,

v.

BRAZOS LODGE CORPORATION, et al., Defendants–Appellees.

No. 18891.

Supreme Court of New Mexico.

March 27, 1991.

Edward J. Apodaca & Associates, Edward J. Apodaca, Sr., Albuquerque, Franchini, Wagner, Oliver, Franchini & Curtis, Gene E. Franchini, Albuquerque, for plaintiff-appellant.

Carpenter, Crout & Olmsted, Michael R. Comeau, C. Mott Woolley, Simon, Cuddy & Friedman, Charlotte H. Hetherington, Santa Fe, for defendants-appellees.

## OPINION

SOSA, Chief Justice.

On June 14, 1989, appellant Joe P. Rivera filed an action to quiet title to certain land within the Tierra Amarilla Land Grant located in Rio Arriba County, New Mexico. The complaint pleaded title based upon a 1955 quitclaim deed for 2,990 acres and a 1984 survey that describes 5,404.78 acres.

Title by adverse possession was not pleaded. Numerous defendants were named and hereinafter are referred to as "Brazos defendants" and "Jones defendants." Each group of defendants owns land within the acreage claimed and, by separate motions, sought summary judgment and sanctions against appellant and his attorney for filing a pleading without "good ground to support it." *See* SCRA 1986, 1–011 (Rule 11). Appellant filed identical responses, affidavits, and exhibits in opposition to each motion, portions of which were ordered stricken by the court on motion by the Brazos defendants. Appellant does not challenge this order.

The district court granted both summary judgment motions on the ground that, as a matter of law, appellant's claim was based upon a fraudulent deed, and granted the motions for Rule 11 sanctions against appellant and his attorney, Edward J. Apodaca, Sr. Two hearings were held, one on October 20, 1989, on the Brazos defendants' presentment of judgment and attorney fees, and the other on January 19, 1990, on appellant's reply to the motion for sanctions and on his motion for reconsideration. Subsequently, the court sanctioned appellant and Apodaca to pay defendants' attorney fees and costs in the amount of $18,181.85. The appeals were consolidated for our review upon motion by the Jones defendants. We affirm in part and reverse in part.

■ Initially, we note that, although the docketing statement, brief in chief, and replies to the summary judgment motions attempt to argue the elements of adverse possession, we will not consider argumentation based on this theory as it was not alleged in the complaint. *See* SCRA 1986, 12–216(A). As stated by the district court in its September 1989 letter decision, "the [appellant] neglected to [claim adverse possession] at the time he filed his complaint and all parties who have answered (as well as this court) are under the distinct impression that [appellant] based his claim on the deed and nothing else." A complaint must proceed upon a distinct and definite theory and upon that theory the case must stand

or fall. *Gallegos v. Sandoval*, 15 N.M. 216, 106 P. 373 (1909).

If "one undertakes to allege that he has title by adverse possession he must allege that his possession was attended by all the circumstances requisite to constitute such adverse possession." *Oliver v. Enriquez*, 17 N.M. 206, 212, 124 P. 798, 799 (1912); *see also Martinez v. Cook*, 56 N.M. 343, 351, 244 P.2d 134, 140 (1952) (in pleading adverse possession all necessary elements must be pleaded). Even had the essential elements for the statutory cause of action of adverse possession been pled properly, our affirmance of the district court regarding the legal sufficiency of the deed necessarily would defeat the claim as color of title could not be proved by clear and convincing evidence. *See Slemmons v. Massie*, 102 N.M. 33, 690 P.2d 1027 (1984) (if proof of one element of a claim of adverse possession fails, the entire claim fails). This court does not correct harmless error. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970). Accordingly, our review of the summary judgment orders against appellant concerns whether the district court correctly ruled there were no genuine issues of material fact concerning the 1955 deed and the deed was fraudulent as a matter of law.

## SUMMARY JUDGMENT

SCRA 1986, 1–056(C), provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Such proofs are examined in a light most favorable to an appellant's claims. *Ellingwood v. N.N. Investors Life Ins. Co.*, 111 N.M. 301, 805 P.2d 70 (1991). As movants, the defendants were obligated to make a prima facie showing of entitlement to summary judgment on the issue of title to the subject land. *See Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). A prima facie showing contemplates such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted. *Id.* The movant

need not demonstrate beyond all possibility that no genuine factual issue existed. *Koenig v. Perez*, 104 N.M. 664, 726 P.2d 341 (1986). Once this showing was made, the burden shifted to appellant to show, in this case, that genuine questions of material fact existed regarding his title to the land. *See id.* at 666, 726 P.2d at 343. On appeal, this court must look to the whole record and take note of any evidence therein that puts a material fact in issue. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977).

In its letter decision of September 15, 1989, the district court stated in pertinent part:

This case is another episode in the seemingly endless saga of the Tierra Amarilla Land Grant. Questions regarding the Land Grant were largely laid to rest in previous litigation. See *HND Land Co. v. Suazo*, 44 N.M. 547, 105 P.2d 744 (1940); *Martinez v. Rivera*, 196 F.2d 192 (10th Cir.1952) and *Martinez v. Mundy*, 61 N.M. 872 [87], 295 P.2d 209 (1956). The Plaintiff has also made previous claims identical to those made in this case, relying upon the same January 21, 1955 Quitclaim Deed he proffers now. See *Joe O. Garcia v. Manuel Martinez*, RA 86–876(C) and *Joe O. Garcia v. Jose P. Rivera*, RA 86–877(C). That deed, however, is quite obviously a sham.

First, it refers to one Rufino Martinez, Rivera's grantor in the 1955 deed, as the original grantee of the Tierra Amarilla Land Grant. This is wrong as a matter of law since that question of the original grantee was determined by the 10th Circuite [sic] Court of Appeals in 1952. As a practical matter, that claim would be an impossibility as well. Rufino Martinez' age at the time of the deed would preclude it.

More importantly, the 1955 deed contains a glaring defect. While purporting to be executed on January 21, 1955, the Quitclaim Deed specifically refers to a March 4, 1889 [sic] deed—neither notarized nor acknowledged—and recites that this 1889 [sic] deed was filed for record on May 19, 1955. A natural question arises as to

how a deed executed in January 1955 could refer to a document to be filed nearly four months in the future.

The question was posed to Rivera during a deposition taken in the court of one of the 1986 cases in this district. At that time, Rivera had no explanation but he and his lawyer, the same Edward Apodaca who represents him in this lawsuit, acknowledged that they understood the question being posed.

Here appellant's claim of superior title is based on a quitclaim deed dated January 21, 1955, that incorporates recording information about an 1899 deed that did not exist until May 1955, three and one-half months after the execution of the quitclaim deed. Appellant claims genuine issues of material fact exist regarding intent of the parties to the quitclaim deed, the amount of acreage conveyed, and whether the same land at issue here was involved in *Martinez v. Mundy*, 61 N.M. 87, 295 P.2d 209 (1956), *overruled, Evans Fin. Corp. v. Strasser*, 99 N.M. 788, 664 P.2d 986 (1983). In support he relies upon his affidavit and those of two alleged lessees of the land, Manuel Martinez and Mario Martinez.

In his affidavit, appellant stated he had "been involved in either leasing or acquisition of portions of the land herein subject of quiet title since December of 1954," and that he was "never apprised of the fact that the deed referred to a deed which was filed of record on 19 May 1955, approximately 3½ months after 21 January 1955." The remaining averments are statements concerning various times of possession, payment of taxes, and that the 1955 deed constitutes color of title. Mario's affidavit simply averred that he and his family resided on the property during April 1985, while Manuel's affidavit describes events surrounding a 1986 lawsuit brought by Joe O. Garcia, Jr. against him.

Appellant's contention that a genuine issue exists concerning intent of the parties must fail. Absent an ambiguity, the trial court may not go outside the deed itself to interpret the intention of the parties. *See Northrip v. Conner*, 107 N.M. 139, 754 P.2d 516 (1988). Both groups of defendants successfully demonstrated the fraudulent nature of the deed on its face and that, as a matter of law, no title passed based upon the 1899 deed. *See Martinez v. Mundy.*

The plaintiffs in *Martinez v. Mundy* attempted to discredit the original patent granted to Francisco Martinez for the entire Tierra Amarilla Land Grant. The court, however, held the patent valid. Next, those plaintiffs challenged the chain of title from Francisco to F.A. Manzanares and then to T.B. Catron. All conveyances within this chain were held to be valid, as was the title of defendant Mundy. Thus, appellant's claim that he received the property through a different chain of title than the one established in *Martinez v. Mundy* is unfounded as a matter of law.

Although appellant asserts the existence of another question of fact—whether the quitclaim deed was sufficient to establish color of title—his assertion in this regard is immaterial for the reasons previously discussed. Whether appellant sincerely believed he had been given title to some land by the 1955 quitclaim deed is irrelevant to the issue of the legal sufficiency of the deed, although appellant's subjective belief in this regard may have some relevance to the issue involving the imposition of the Rule 11 sanctions. Therefore, having failed to demonstrate the existence of any genuine issue of material fact, the district court correctly concluded as a matter of law that defendants' titles were superior and paramount to the 1955 quitclaim deed and properly entered the summary judgments, which we affirm.

RULE 11 SANCTIONS

The Rule 11 issues presented by this case are ones of first impression. Recently, in *Cherryhomes v. Vogel*, 111 N.M. 229, 804 P.2d 420 (Ct.App.1990), our court of appeals correctly noted that New Mexico case law has not addressed certain portions of the rule, to wit, the "good ground" requirement to support a pleading or other paper and the requirement that a violation be willful. The court of appeals recognized "potential difficulties that may be encountered in applying New Mexico's Rule 11."

*Id.* at 232, 804 P.2d at 423. Such difficulties stem from the fact that, unlike the federal rule that was amended in 1983 to provide an objective inquiry, our rule creates a less stringent standard of subjective good faith, requiring inquiry into the subjective "knowledge, information and belief" surrounding the filing. In addition, under the pre–1983 federal version, the use of the word "willful" was construed to mean that an attorney had to have subjective bad faith in the filing of a pleading or other paper. *See Burkhart v. Kinsley Bank,* 804 F.2d 588 (10th Cir.1986). Nevertheless, despite the different standards of inquiry, we find general guidance in cases from other jurisdictions.

■ Rule 11 makes the signature of an attorney a certification that he has in fact read the pleading or other paper, and "that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay." SCRA 1986, 1–011. "Rule 11 was 'designed to encourage honesty in the bar when bringing and defending actions [and] ought to be employed only in those rare cases in which an attorney deliberately presses an unfounded claim or defense.' " *Boone v. Superior Court,* 145 Ariz. 235, 239, 700 P.2d 1335, 1339 (1985) (en banc) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1334, at 503 (1969)). The imposition of sanctions for mere oversights, however, would be inappropriate. *See, e.g., Alaska Fed. Sav. & Loan Ass'n v. Bernhardt,* 794 P.2d 579, 582 (Alaska 1990). A court may exercise its discretion and impose sanctions for a willful violation of the rule when it finds, for example, that a pleading or other paper signed by an attorney is not well grounded in fact, is not warranted by existing law or a reasonable argument for its extension, or is interposed for an improper purpose.

■ *Purpose and Objectives of the Rule.* The primary goal of Rule 11 is to deter baseless filings in district court. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. ——, ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990), by testing the conduct of counsel. *Singer v. Creole Petroleum*

*Corp.,* 311 A.2d 859, 863 (Del.1973). It has been suggested that counsel should be held strictly accountable for all allegations contained in the complaint. *Sanuita v. Common Laborer's & Hod Carriers Union of Am.,* 402 P.2d 199, 200 (Alaska 1965). Although the rule should be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the rule's central purpose of deterrence. *Id.; see also White v. General Motors Corp.,* 908 F.2d 675, 683 (10th Cir.1990) (sanctions are intended to deter future litigation abuse, punish present litigation abuse, compensate victims of litigation abuse, and streamline court dockets and facilitate case management); *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 404 (6th Cir.), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987) (goals of Rule 11 are deterrence and punishment of offenders and compensation of their opponents for expenditure of time and resources responding to ill-founded pleadings or other papers).

"The objectives sought by Rule 11 and the wording of the rule primarily 'place a moral obligation' upon the lawyer 'to satisfy himself that there are good grounds for the action or defense.' " *Boone,* 145 Ariz. at 239, 700 P.2d at 1339 (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1333, at 499 (1969)). This requires honesty and good faith in pleading. *Stuckey's Carriage Inn v. Phillips,* 122 Ga.App. 681, 178 S.E.2d 543 (1970), *cert. denied* (1971); *see also Alaska Fed. Sav. & Loan Ass'n,* 794 P.2d at 582 (one purpose of rule is to insure good faith of counsel).

*Standard of Review.* Considerable disagreement about the appropriate standard for appellate review of Rule 11 sanctions has been displayed by courts at all levels. *See* Annotation, *General Principles Regarding Imposition of Sanctions Under Rule 11, Federal Rules of Civil Procedure,* 95 A.L.R.Fed. 107, 154–61 (1989). The U.S. Supreme Court, however, recently ruled that an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11

determination. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. ——, ——, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990). An abuse of discretion will be found when the trial court's decision is clearly untenable or contrary to logic and reason. *Newsome v. Farer*, 103 N.M. 415, 420, 708 P.2d 327, 332 (1985).

■ The trial judge is in the best position to view the factual circumstances surrounding an alleged violation and must exercise sound judgment concerning the imposition of sanctions. Because Rule 11 gives courts discretion to fashion sanctions to fit specific cases, no mechanical rules can be stated. *See INVST Fin.*, 815 F.2d at 401 (court given wide discretion in deciding nature and extent of sanctions to impose). The more complex or doubtful the situation, the more searching will be the inquiry dictated by a sound judgment and discretion. *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). However, a district court necessarily would abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter*, 496 U.S. at ——, 110 S.Ct. at 2461. With this type of latitude vested in the court, it is incumbent upon the court to produce a record on the basis of which we can determine that its discretion was not abused, *United States v. Dayton*, 604 F.2d at 938, since the question on review is not whether this court would have applied the sanction but whether the district court abused its discretion in so doing.

■ *Subjective Standard of Measure.* Unlike the federal counterpart, the good ground provision in New Mexico's Rule 11 is to be measured by subjective standards at the time of the signing of the pleading. Any violation depends on what the attorney or litigant knew and believed at the relevant time and involves the question of whether the litigant or attorney was aware that a particular pleading should not have been brought. Sanctions should be entered against an attorney rather than a party only when a pleading or other paper is unsupported by existing law rather than unsupported by facts. *See Blake v. National Casualty Co.*, 607 F.Supp. 189, 193 (C.D.Cal.1984); *Friesing v. Vandergrift*, 126 F.R.D. 527 (S.D.Tex.1989) (client must have been personally aware or otherwise responsible for bad-faith procedural action to impose Rule 11 sanctions on client-party). "[T]he fact that a subjective standard is applicable does not mean that a party can pursue a claim on nothing more than the unreasonable hope that he may discover a basis for the lawsuit. These circumstances in themselves are evidence of the absence of a subjective good-faith belief." *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 181, 745 P.2d 617, 629 (Ct.App.1987). Good ground simply cannot exist as to any alleged proposition known to be false at the time of the filing.

The heart of a determination of whether good ground exists is the application of the concept to factual allegations or denials. Risinger, *Honesty in Pleading and Its Enforcement: Some "Striking" Problems with Federal Rule of Civil Procedure 11*, 61 Minn.L.Rev. 1, 53 (1976–77). In the case at bar, what appears improper about the conduct of appellant and his attorney is not that they lacked sufficient knowledge to support the allegations of the complaint, but that they actually possessed legal and factual knowledge contrary to the allegations. Although no findings of fact or conclusions of law were entered on this issue, the record contains a letter decision indicating that the district court recognized an unfairness to defendants in that the filing of the suit subjected them to inconvenience and unwarranted expense. The court held appellant and his attorney personally responsible for the expenses incurred by all the defendants. Appellant contends the sanctions imposed are unreasonable and excessive.

■ *Reasonableness of the Sanctions.* When determining an amount of attorney fees, the court must find that the actions for which fees are sought reasonably were necessary to defend appellant's claim. *See INVST Fin.*, 815 F.2d at 404. The record indicates that the Jones defendants

presented a cost bill for $24,119.45 along with detailed affidavits by attorneys Hetherington & Katz. Appellant filed objections, which generally alleged a lack of justification for such fees and costs. The court, in its letter decision of March 6, 1990, indicated that it found the requested attorney fees excessive, and awarded only $9,095.88 for fees and costs for the Jones defendants. The Brazos defendants filed an application for attorney fees and costs in the amount of $9,085.97, supported by the affidavits of attorneys Woolley and Yost. Appellant filed a reply to this application and a memorandum in support thereof. After a hearing on October 20, 1989, the court awarded fees and costs in the amount requested.

In *White v. General Motors Corp.*, 908 F.2d 675 (10th Cir.1990), the district court's findings of fact and conclusions of law were detailed enough to assist in appellate review, help assure the litigants that the decision was the product of thoughtful deliberation, and enhanced the deterrent effect of the ruling. Without relevant findings of fact and conclusions of law, we properly cannot evaluate whether an abuse of discretion occurred as to the amount of the sanctions. We only can speculate in this regard. Similarly, we properly cannot review whether an abuse of discretion occurred in the imposition of sanctions for the filing of the complaint without speculation about the subjective knowledge of the relevant facts and applicable law held by appellant and his attorney at the time of filing. We must, therefore, remand this cause to the trial court for further action.

On remand, the court should inquire into, and make relevant findings regarding factual and legal bases available to appellant and his attorney before the claim was filed. It would be useful to know what knowledge the attorney and appellant possessed regarding the factual basis of the claims asserted against the defendants. The findings should include information on whether appellant and his attorney possessed facts suggesting that a claim to quiet title could not lie against defendants. In addition, because we are unable to determine the actual basis for the amount of sanctions imposed especially with regard to the Jones defendants, upon remand the district court should state the basis for the amount of sanctions awarded, including whether the hours actually spent reasonably were necessary under the circumstances. These concerns compel a discussion of whether the district court should hold an evidentiary hearing before entering the findings and conclusions.

 *Due Process Considerations.* Determining whether process is due in a Rule 11 case requires an application of familiar principles of due process. The timing and content of the notice and the nature of the hearing will depend upon an evaluation of all the circumstances and an appropriate accommodation of the competing interests involved. *Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir.1987) (en banc). While we are mindful that Rule 11 sanctions should be imposed rarely, they should be levied only if the mandates of procedural due process are obeyed.

 Fundamental fairness requires that an individual must be permitted to defend himself against charges that threaten to stain his personal and professional future and that the basic protections of due process be followed before an attorney is fined for prosecuting a frivolous case. *In re Marriage of Flaherty*, 31 Cal.3d 637, 652–53, 646 P.2d 179, 189, 183 Cal.Rptr. 508, 518 (1982).

No set rule can be stated to govern all Rule 11 cases; the standard is necessarily flexible to cover varying situations. The specific dictates of due process will be determined by the interaction of several factors. These factors include but are not limited to: the interests of attorneys and parties in having a specific sanction imposed only when justified; the risk of an erroneous imposition of sanctions under the procedures used and the probable value of additional notice and hearing; and the interests of the court in efficiently monitoring the use of the judicial system and the fiscal and administrative burdens that additional procedural requirements would entail.

Providing due process will ensure that Rule 11 will not be applied arbitrarily, that erroneous application of the rule will be minimized, and that creative legal arguments and vigorous advocacy will not be stifled.

*Donaldson,* 819 F.2d at 1558.

The federal version of Rule 11 does not require written findings of fact and conclusions of law, but the presence of the oral statement in the record facilitates appellate review. In *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205–06 (7th Cir.1985), sanctions were upheld even though no formal hearing on sanctions was held. According to the *Rodgers* court, no hearing was necessary where the district court that had imposed the sanctions had participated in the proceedings. *See also Albright v. Upjohn Co.,* 788 F.2d 1217 (6th Cir.1986) (sanctions imposed despite absence of written findings of fact); *INVST Fin.,* 815 F.2d at 401 (district court did not set forth in writing the basis for imposing Rule 11 sanctions, but the record did contain an oral statement of those reasons); *cf. In re Kunstler,* 914 F.2d 505, 522 (4th Cir.1990) (case remanded for hearing to allow appellants opportunity to respond to type and amount of sanction). On remand in the instant case, the district court should include these considerations in its findings.

Based upon the above, the order imposing sanctions is vacated, and the case is remanded for the entry of findings of fact and conclusions of law, and an evidentiary hearing should the district court deem it necessary. The parties shall be afforded an opportunity to file their proposed findings of fact and conclusions of law before entry by the court.

In conclusion, the summary judgments entered by the district court are affirmed in their entirety. The case is remanded to the court for the entry of findings and conclusions only on the imposition of Rule 11 sanctions. The necessity of an evidentiary hearing is left within the sound discretion of the district court.

IT IS SO ORDERED.

BACA, J., and LESLIE C. SMITH, District Judge (sitting by designation), concur.