**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-074**

**Filing Date: May 23, 2013**

**Docket No. 31,607**

**RONALD BERNIER, as personal**
**representative of the ESTATE OF**
**THERESE BERNIER, deceased**
**and as Trustee of the Therese Bernier**
**Trust,**

      **Plaintiff-Appellant,**

**v.**

**HAROLD BERNIER, deceased,**
**represented by WILLIAM DOUGLAS**
**BERNIER, as substitute representative,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Ilyse D. Hahs, Attorney at Law, LLC
Ilyse Hahs-Brooks
Albuquerque, NM

G. Holdt Garver Chartered
G. Holdt Garver
Albuquerque, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

Cuddy & McCarthy, LLP
Aaron J. Wolf
Y. Jun Roh
Santa Fe, NM

1

for Appellee

**OPINION**

**SUTIN, Judge.**

**{1}** In this case, the district court assessed a sanction under Rule 1-011 NMRA against the named Plaintiff, Therese Bernier (Mrs. Bernier), where her son, Ronald Bernier (Ronald), acting as Mrs. Bernier's attorney in fact, commenced and prosecuted a lawsuit that lacked good ground. Within that context, we are called upon to determine whether the district court erred in sanctioning Mrs. Bernier under Rule 1-011 in the amount of attorney fees for Defendant Harold Bernier (Harold), deceased, represented by William Douglas Bernier (William), as substitute representative, for Ronald's wrongful conduct. We also consider whether the court abused its discretion in awarding William's costs pursuant to Rule 1-054 NMRA.

**{2}** We hold that the district court did not err in determining that Ronald lacked a good ground on which to file the underlying lawsuit. We also hold that because Ronald was acting pursuant to Mrs. Bernier's power of attorney, Mrs. Bernier was liable for Ronald's wrongful acts. Thus, the district court did not abuse its discretion by sanctioning Mrs. Bernier and in awarding William his costs. Accordingly, we affirm the district court. Finally, although William asks for his attorney fees on appeal, we conclude that there exists no basis upon which we can award such fees.

**BACKGROUND**

**{3}** The following undisputed facts were found by the district court. At the center of this case was a Walgreen Company (Walgreen) stock certificate that evidenced ownership of 25,696 shares of stock in that company. The certificate was in the name of Therese Bernier and also in the name of her trust. The stock certificate represented a portion of the stock that Mrs. Bernier's late husband had accumulated over the course of his working life with Walgreen. Mrs. Bernier was in her nineties throughout the underlying proceedings, and on June 17, 2012, while this appeal was pending, Mrs. Bernier died.

**{4}** Before the start of litigation in this matter, Mrs. Bernier granted Ronald her power of attorney to, among other things, act on her behalf as her "agent" in "claims and litigation." In April 2007, acting pursuant to that power of attorney as Mrs. Bernier's attorney-in-fact, Ronald retained legal counsel to commence litigation in this matter on behalf of Mrs. Bernier. At all times during the underlying proceedings, Ronald represented and acted on behalf of Mrs. Bernier as her attorney-in-fact, and when Mrs. Bernier died, Ronald, as personal representative of Mrs. Bernier's estate, was substituted as the plaintiff in this case.

**{5}** Harold Bernier was the brother of Mrs. Bernier's late husband and, therefore, he was

2

also Ronald's uncle. In 2006, Ronald and his sister, Beverly Kedzior (who was Mrs. Bernier's daughter and Harold's niece), approached their uncle Harold and asked him to hold the Walgreen stock certificate because they wanted a trusted third party to hold it until they both agreed that it should be returned to Ronald when it was needed for Mrs. Bernier's care. Harold agreed to hold the stock certificate until Ronald and Beverly reached an agreement about its distribution or until a court ordered its relinquishment.

**{6}** In December 2006, Beverly filed a petition for guardianship and conservatorship against Mrs. Bernier in a sequestered case presided over by then district court judge, Judge Barbara Vigil[1] (the sequestered case). The sequestered case was based on Beverly's allegations that Mrs. Bernier was not competent to manage her own affairs and that Ronald was misappropriating or mismanaging Mrs. Bernier's estate. Harold knew about the sequestered case, and he also knew that there was an ongoing dispute between Ronald and Beverly that included concerns regarding Mrs. Bernier's ability to manage her own finances and Ronald's management of Mrs. Bernier's finances.

**{7}** In January 2007, Ronald caused a letter to be sent to Harold, on Mrs. Bernier's behalf, by an attorney, demanding that Harold return the stock certificate to Mrs. Bernier. Harold did not return the certificate. Ronald knew that Harold did not have any financial interest in or claim to the stock certificate, nor was Harold claiming any fees for holding the certificate.

**{8}** On April 30, 2007, through legal counsel, Ronald caused a complaint to be filed in Mrs. Bernier's name as Plaintiff, against Harold, for replevin, declaratory judgment, temporary injunction, fraud, breach of contract, resulting trust, and prima facie tort. Among other averments, the complaint alleged that Mrs. Bernier entrusted the stock certificate to Harold and that Harold, by failing to comply with a demand to return the certificate, wrongfully refused to return the certificate.

**{9}** Harold's answer to the complaint explained that Ronald had asked him to hold the stock certificate because Ronald and Beverly wanted a trusted third party to hold it until they both agreed that it should be returned. Harold specifically disclaimed any personal or financial interest in the stock certificate and explained that he did not return it to Mrs. Bernier upon her demand because, among other reasons, Ronald and Beverly were engaged in a dispute regarding Ronald's management of Mrs. Bernier's finances. With his answer to the complaint, Harold filed a claim for interpleader,[2] asking the court to hold the stock

---

[1] Judge Vigil was sworn in on December 7, 2012, as a Justice of the New Mexico Supreme Court.

[2] *See* NMSA 1978, § 55-7-603 (2005) (official cmts.) (stating that replevin "enables a bailee faced with conflicting claims to [personal property] to compel the claimants to litigate their claims with each other rather than with him").

certificate until the dispute between Ronald and Beverly was settled. Ronald then caused a motion to be filed for partial summary judgment for replevin and declaratory relief and for dismissal of the counterclaim for interpleader. The district court granted the interpleader and accepted possession of the stock certificate, and it denied the motion for partial summary judgment because, among other reasons, "there was a big hole in the evidence as to where [the stock] went" as between Mrs. Bernier and her trust.

{10}    In February 2008, Ronald caused a renewed motion for partial summary judgment for replevin and declaratory relief and for dismissal of the counterclaim for interpleader to be filed. In May 2008, the district court held a hearing on Ronald's renewed motion. Satisfied that Mrs. Bernier was the rightful owner of the stock, the district court granted "a partial summary judgment[] as . . . to replevin[] of the stock certificate and the declaratory relief" and simultaneously acknowledged that by determining that the stock certificate should go to Mrs. Bernier, Harold "acheiv[ed] the interpleader[.]" *See* Rule 1-022(D) NMRA (explaining that "[t]he decree of the district court shall determine the disposition of the [interpleaded] . . . thing in dispute"). Therefore, Mrs. Bernier's motion to dismiss the counterclaim for interpleader was denied. Because, at that point, the sequestered case was ongoing, the district court ordered Mrs. Bernier's counsel to apprise Judge Barbara Vigil of its determination so that questions of how the stock certificate would be handled, to whom it would go, and whether it would be used for Mrs. Bernier's benefit, could be resolved in the sequestered case. The district court concluded that its order resolved all claims, leaving only the issue of damages that resulted from Harold's alleged wrongful retention of the stock certificate.

{11}    Harold died on April 26, 2009. Because Ronald insisted that the case against Harold proceed, Harold's son, William, presumably as representative of Harold's estate, was substituted as Defendant on June 23, 2009. William rejected Ronald's offer to settle the damages issue for $234,000, and the issue of damages was adjudicated in a bench trial on October 14, 2009. At the damages trial, Ronald claimed that it was unjust for Harold to keep the stock certificate from Mrs. Bernier and that Harold's estate should be held liable for $275,718, representing the lost value of the stock during the litigation. The district court, Judge James Hall, held in favor of William and awarded no damages. The court reasoned "that Harold's actions were not an unjust detention" because when Harold was "faced with a difficult situation, [he] did what he thought was appropriate in turning the matter over to the [c]ourt."

{12}    William then requested that a sanction be imposed against Mrs. Bernier, pursuant to Rule 1-011, in the amount of the defense attorney fees. He also moved for costs pursuant to Rule 1-054.[3] The district court entered judgment imposing the sanction and awarding costs. Ronald caused an appeal from the district court's sanction and award of costs. This

---

[3] After these motions were filed, but prior to the court hearing them, Judge Hall retired, and this case was reassigned to Judge Vigil.

Court, in an unpublished memorandum opinion, vacated the sanction award and remanded to the district court for the entry of findings of fact and conclusions of law. *See Bernier v. Bernier*, No. 30,401, 2011 WL 2040702, at *1-2 (N.M. Ct. App. 2011). We instructed the district court to enter findings regarding:

> what subjective knowledge and specific conduct it intended to sanction; whether, and if so in what manner, the initial filing of the litigation itself was frivolous or brought in bad faith; why Plaintiff's initial filing or subsequent conduct offended Rule 1-011; whether the cost award was part of the Rule 1-011 sanction; and why the amount of the sanction assessed against Plaintiff herself was appropriate to redress the objectionable behavior.

*Id.* at *2.

**{13}** On remand the parties filed requested findings of fact and conclusions of law. All of the district court's conclusions of law were adopted verbatim from those the defense requested, and fifty-five of the sixty-one findings were adopted verbatim from those requested by the defense. The court's findings and conclusions will be discussed, as pertinent, within the body of this Opinion. In sum, however, the district court concluded that Ronald knew that the complaint against Harold should not have been filed and that by deliberately pressing an unfounded claim, Ronald violated Rule 1-011. The court also clarified that its award of reasonable costs was pursuant to Rule 1-054.

**{14}** Ronald caused Mrs. Bernier to appeal from the district court's findings of fact and conclusions of law resulting in imposition of a sanction and award of costs against Mrs. Bernier. Ronald argues that Mrs. Bernier cannot be held liable for his actions because he was not her agent nor was he a party in the case. And he argues that it was error to attempt to impose a sanction against him because he was not a party. Ronald makes a number of other arguments in support of his contention that the court's imposition of a sanction constituted an abuse of discretion. And he argues that the district court abused its discretion in awarding costs to William. We are not persuaded by any of Ronald's claims, and we affirm the district court.

**DISCUSSION**

**Standard of Review**

**{15}** We review a district court's imposition of a Rule 1-011 sanction for an abuse of discretion. *Lowe v. Bloom*, 112 N.M. 203, 204, 813 P.2d 480, 481 (1991). The district court "is in the best position to view the factual circumstances surrounding an alleged violation [of Rule 1-011] and must exercise sound judgment concerning the imposition of sanctions." *Rivera v. Brazos Lodge Corp.*, 111 N.M. 670, 675, 808 P.2d 955, 960 (1991). Although our standard of review is generally very deferential, *Rangel v. Save Mart, Inc.*, 2006-NMCA-120, ¶ 25, 140 N.M. 395, 142 P.3d 983, our deference wanes when the district court adopts

5

verbatim the prevailing party's extensive requested findings of fact and requested conclusions of law in complex cases.[4] Further, "a district court . . . abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Rivera*, 111 N.M. at 675, 808 P.2d at 960. Our review of the district court's assessment of costs is also subject to an abuse of discretion standard. *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 103, 134 N.M. 77, 73 P.3d 215.

**Appellant's Agency Argument**

**{16}** Ronald argues that the district court erred in sanctioning Mrs. Bernier for his conduct. He argues that "[t]here was no demonstration in the proceedings or in the record that Ronald . . . and Mrs. Bernier had an employee or agent relationship[] such that she should be vicariously liable for his alleged actions." Ronald does not state where in the record he raised this argument. We therefore will not consider it. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").

**{17}** Ronald also argues that, because he was not a party to the action, his actions were not subject to Rule 1-011 sanctions. We observe that by Ronald's own admission, he was, at all times relevant to this case, acting pursuant to an Illinois power of attorney. That document included, among other powers, the authority to "institute, prosecute, defend, abandon, compromise, arbitrate, settle[,] and dispose of any claim in favor of or against [Mrs. Bernier.]" It also expressly deemed Ronald to be Mrs. Bernier's "agent" with the authority to act for Mrs. Bernier and in her name by virtue of his status as her "attorney-in-fact." Ronald ratified the complaint "[a]s Power of Attorney for [Mrs.] Bernier[,]" stating that he had read the complaint and that he believed its contents to be "true and accurate to the best of [his] information, knowledge[,] and belief." No question was raised in the district court and none has been raised on appeal as to Ronald's authority to retain legal counsel and to commence and prosecute the underlying lawsuit on behalf of Mrs. Bernier. Under these

---

[4] The practice of full scale verbatim adoption of extensive requested findings of fact and requested conclusions of law of the prevailing party, especially in complex cases, can cause this Court on appeal to grant less deference to a court's findings of fact and conclusions of law than is otherwise accorded. *Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 2013-NMCA-___, ¶ 2, ___ P.3d ___ (No. 31,325, filed May 1, 2013) (stating that "[t]his Court looks askance at wholesale verbatim adoption of the prevailing party's extensive requested findings of fact and conclusions of law" and also stating, "when appropriate, we will relax our usual deferential review"); *see also Pollock v. Ramirez*, 117 N.M. 187, 192, 870 P.2d 149, 154 (Ct. App. 1994) (stating that "the trial court is required to exercise independent judgment in arriving at its decision and should generally avoid verbatim adoption of all of the findings and conclusions submitted by a party").

circumstances, Ronald's actions, including his signature verifying the truth and accuracy of the complaint, had the same effect as if Mrs. Bernier had herself commenced the action and had signed the document herself. *See Smith v. Walcott*, 85 N.M. 351, 356, 512 P.2d 679, 684 (1973) (explaining that where a husband signed an answer to a complaint on behalf of himself and his wife, as her attorney, his signature had the same effect as if she had personally signed). Moreover, because Ronald was acting pursuant to Mrs. Bernier's power of attorney, Mrs. Bernier was subject to direct liability for Ronald's wrongful conduct. *See* Restatement (Third) of Agency § 1.04(7) (2006) (stating that "[a] power of attorney is an instrument that states an agent's authority"); *id.* cmt. g ("A power of attorney is a formal manifestation from principal to agent, as well as to third parties with whom the agent interacts, that evidences the agent's appointment and the nature or extent of the agent's authority."); Restatement (Third) of Agency § 7.03(1)(a)(i) (2006) (stating that "[a] principal is subject to direct liability to a third party harmed by an agent's conduct when . . . the agent acts with actual authority . . . and . . . the agent's conduct is tortious"). We therefore reject Ronald's argument that Mrs. Bernier could not be held liable for his actions.

**Rule 1-011 Sanctions**

**{18}** Pursuant to Rule 1-011, the district court assessed a sanction consisting of William's attorney fees in the amount of $56,575.44. Ronald argues that the district court erred by failing to provide adequate evidentiary findings to support the assessment. He also argues that, as a matter of policy, a party should not be sanctioned unless the complaining party has, throughout the litigation, complained of Rule 1-011 violations, and because the issue of sanctions was not raised until the end of the case, the imposition of a sanction against Mrs. Bernier constituted a violation of her due process and an abuse of the court's discretion. Ronald also argues that the district court's decision to order a sanction in the amount of William's attorney fees conflicts with the "American Rule" and that the court erred in assessing a sanction based on the fact that Mrs. Bernier did not prevail in her damages claim. And he further argues that the district court abused its discretion or otherwise erred in awarding a sanction for the entire case when Mrs. Bernier was the prevailing party in the replevin claim. We begin our discussion with an overview of Rule 1-011, followed by an examination of Ronald's arguments.

**{19}** "The primary goal of Rule [1-011] is to deter baseless filings in district court." *Rivera*, 111 N.M. at 674, 808 P.2d at 959. Rule 1-011(A) provides, in pertinent part, that

> [t]he signature of an attorney or [a] party constitutes a certificate by the signer that the signer has read the pleading, motion[,] or other paper; that to the best of the signer's knowledge, information[,] and belief there is good ground to support it[.] . . . For a willful violation of this rule[,] an attorney or [a] party may be subjected to appropriate disciplinary or other action.

Although Rule 1-011 allows the district court to sanction either an attorney or a party, "[s]anctions should be entered against an attorney rather than a party only when a pleading

7

or other paper is unsupported by existing law rather than unsupported by facts." *Rivera*, 111 N.M. at 675, 808 P.2d at 960.

**{20}** "Any [Rule 1-011] violation depends on what the . . . litigant knew and believed at the relevant time and involves the question of whether the litigant . . . was aware that a particular pleading should not have been brought." *Rivera*, 111 N.M. at 675, 808 P.2d at 960. Here, the question is whether Ronald had a "good ground" for initiating and continuing to prosecute the lawsuit. *Cf. Rangel*, 2006-NMCA-120, ¶ 11 (stating that "[t]he good ground provision is measured by a subjective standard and is appropriate only in those rare cases in which an attorney deliberately presses an unfounded claim or defense" (internal quotation marks and citation omitted)). "For Rule 1-011 sanctions to be appropriate, there must be subjective evidence that a willful violation has occurred." *Rangel*, 2006-NMCA-120, ¶ 11 (internal quotation marks and citation omitted).

**{21}** Upon the imposition of Rule 1-011 sanctions, the district court must enter findings of fact that are supported by evidence in the record that indicate the basis for the sanctions. *Benavidez v. Benavidez*, 2006-NMCA-138, ¶¶ 15-16, 140 N.M. 637, 145 P.3d 117. Generalized conclusions that the sanctioned party "acted in bad faith, vexatiously, [or] wantonly[,]" for example, will not suffice. *State ex rel. State Highway & Transp. Dep't v. Baca*, 120 N.M. 1, 8, 896 P.2d 1148, 1155 (1995) (internal quotation marks and citation omitted). Rather, Rule 1-011 sanctions "must be supported by particularized findings of misconduct[.]" *Id.*

**{22}** We begin with Ronald's argument that the district court abused its discretion by assessing a sanction without providing adequate evidentiary findings to support the assessment. As an initial matter, we observe that Ronald's argument in regard to the sufficiency of the court's findings focuses on Mrs. Bernier's actions rather than his own. In that regard, Ronald argues that the record does not reflect *Mrs. Bernier's* subjective knowledge that filing the replevin action or "some [other] aspect of the litigation of the replevin action was improper[.]" He also argues that neither Judge Vigil nor Judge Hall found that *Mrs. Bernier* engaged in any wrongful litigation tactics or that *Mrs. Bernier* filed a meritless action. To the extent that these arguments depend on Ronald's lack-of-agency argument, we are not persuaded. As we concluded earlier in this Opinion, because Ronald was acting as Mrs. Bernier's attorney-in-fact, Mrs. Bernier was liable for Ronald's wrongful actions. *See Smith*, 85 N.M. at 356, 512 P.2d at 684; Restatement (Third) of Agency § 1.04(7), cmt. g; Restatement (Third) of Agency § 7.03(1)(a)(I).

**{23}** Moreover, as William points out in his answer brief, the district court entered extensive findings, which were supported by evidence in the record, that demonstrated that the lawsuit should not have been filed and should not have continued. And Ronald does not attack specific findings pertaining to the wrongful nature of his commencing and continuing to prosecute the underlying litigation. *See* Rule 12-213(A)(4) NMRA (requiring the appellant to "set forth a specific attack on [disputed] finding[s], or such finding[s] shall be deemed conclusive"). Therefore, Ronald's argument that the court assessed a sanction

8

without providing adequate evidentiary findings to support them provides no basis for reversal.

{24}    We next examine Ronald's policy-based argument that "where a party moving for Rule 1-011 . . . sanctions at the end of the case has never previously complained of the alleged [Rule 1-011 violations], a court abuses its discretion in awarding sanctions[.]" We understand Ronald's argument in this regard to be an attempt to incorporate the "safe harbor" provision of Rule 11 of the Federal Rules of Civil Procedure into the application, in this case, of Rule 1-011. *See* Fed. R. Civ. P. 11(c)(2) (providing twenty-one days in which a party may withdraw or correct a challenged pleading or other paper to avoid the possible imposition of sanctions); *see also id.* advisory committee's note (1993 amends.) (explaining that under the 1993 amendments (b) and (c), "[g]iven the 'safe harbor' provisions . . . , a party cannot delay serving its Rule 11 motion until conclusion of the case" and recognizing that the twenty-one day period provided for in Rule 11(c)(2) constitutes the provision of a "safe harbor"). Unlike its federal counterpart, however, Rule 1-011 prescribes no time limit within which a party can file a motion for sanctions. *Compare* Fed. R. Civ. P. 11(c)(2), *with* Rule 1-011. Where a New Mexico Rule conflicts with a federal rule, we will adhere to the dictates of the State rule. *See Edington v. Alba*, 74 N.M. 263, 265, 392 P.2d 675, 676 (1964) (declining to follow a Federal Rule of Civil Procedure that was materially different from the applicable New Mexico rule); *cf. Rivera*, 111 N.M. at 673-74, 808 P.2d at 958-59 (explaining that Rule 1-011 differs from Rule 11, thereby requiring a different inquiry into Rule 1-011 than would apply to its federal counterpart). Thus, we see Ronald's safe harbor-policy argument as unpersuasive.

{25}    Nor are we persuaded by Ronald's argument that due process considerations required William to notify him, in advance of the conclusion of the case, of his intention to move for Rule 1-011 sanctions. "Due process requires that the attorney be given notice of the imposition of Rule [1-011] sanctions, may require specific notice of the reasons for the imposition of sanctions, and mandates that the accused be given an opportunity to respond." *Doña Ana Sav. & Loan Ass'n, F.A. v. Mitchell*, 113 N.M. 576, 579, 829 P.2d 655, 658 (Ct. App. 1991). As this Court has previously stated, "[t]he existence of Rule [1-011] gives notice of the . . . possibility of sanctions." *Id.* In this case, Ronald was given notice of William's motions to award attorney fees and other related documents, which included the requests for sanctions, by delivery of copies thereof to Ronald's counsel. And he responded to those motions and related documents by filing responses to them. Additionally, Ronald's counsel orally objected to the attorney fees, and therefore the sanction, at a hearing before the court. Because the record reflects that Mrs. Bernier, acting through Ronald, was given notice and an opportunity to respond to the imposition of the sanction, we conclude that she was not deprived of due process. *Cf. Mitchell*, 113 N.M. at 579, 829 P.2d at 658 (concluding that the attorney was afforded due process in the context of the imposition of Rule 1-011 sanctions because he was given notice and an opportunity to be heard). Moreover, Ronald has not demonstrated why or how his ability to defend against William's requests for the sanction of paying his attorney fees was impaired by the timing of the requests and, therefore, he has not presented a basis for reversal. *See Kysar v. BP Am. Prod. Co.*, 2012-

9

NMCA-036, ¶ 21, 273 P.3d 867 ("A party must show prejudice before reversal is warranted." (internal quotation marks and citation omitted)).

**{26}** We next consider Ronald's argument that the district court's imposition of a sanction in the amount of attorney fees conflicts with the "American Rule." "New Mexico adheres to the so-called American [R]ule that, absent statutory or other authority, litigants are responsible for their own attorney[] fees." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted); *see id.* ¶¶ 12-13 (stating that the policies underlying the American Rule are (1) to "promote[] equal access to the courts for the resolution of *bona fide* disputes" and (2) to "preserve judicial resources" (internal quotation marks and citations omitted)). Our Supreme Court has explained that "[a]llowing an award of reasonable attorney fees to sanction bad faith conduct pursuant to a court's inherent powers is consistent with the policies underlying the American [R]ule[, which] policies only require that the losing litigant should not be discouraged from *fairly* prosecuting or defending a claim." *Id.* ¶ 18 (internal quotation marks and citation omitted). The American Rule expressly does not "provide a shield to parties that *unfairly* prosecute or defend a claim by engaging in bad faith conduct." *Id.* Thus, consistent with the American Rule, a court may impose sanctions, in the form of attorney fees. *Id.* Ronald's argument to the contrary is unavailing.

**{27}** Ronald also argues that "[t]he district court abused its discretion in finding that Mrs. Bernier's failure to prevail on the damages aspect of the case amounted to sanctionable conduct for the entire case under Rule 1-011[.]" Ronald's argument in this regard references the district court's Finding of Fact No. 60, which read as follows:

> Even though the court granted [Mrs. Bernier's r]enewed [m]otion for [s]ummary [j]udgment and returned the stock certificate to [her], it was because the [c]ourt believed that the [c]ourt's appointed Guardian Ad Litem in the sequestered case before Judge Barbara Vigil could take care of [Mrs. Bernier's] interest. . . . Further, the [c]ourt did not find that [Mrs. Bernier] prevailed on her claims of replevin and declaratory relief but only stated that [she] was the rightful owner of the stock certificate [and that the certificate] would be distributed in accordance with the Guardian Ad Litem's responsibility in the sequestered case.

We disagree with Ronald's interpretation of the district court's finding.

**{28}** Contrary to Ronald's view, we do not interpret the district court's Finding of Fact No. 60 to indicate that the court imposed a sanction for the entire case based upon Mrs. Bernier's failure to prevail in the damages claim. Instead, we view the finding simply as an acknowledgment by the district court that the conclusion regarding rightful ownership of the stock certificate did not affect the propriety of Ronald's actions. Furthermore, the finding is one of many in support of the court's imposition of a sanction, and Ronald has not shown the sanction to be based on an erroneous view of the law or based on an erroneous

10

assessment of the evidence. *See Rangel*, 2006-NMCA-120, ¶ 12 (providing that "a district court necessarily would abuse its discretion if it based its ruling on an erroneous view of the law" (internal quotation marks and citation omitted)); *Rivera*, 111 N.M. at 675, 808 P.2d at 960 (recognizing a district court's abuse of discretion if its ruling was based "on a clearly erroneous assessment of the evidence"). Accordingly, we are not persuaded that the sanction constituted an abuse of discretion.

{29}    Ronald's remaining arguments as to the impropriety of the sanction award arise from or relate to Ronald's position that Mrs. Bernier was the prevailing party in the replevin action. Ronald argues that the fact that Mrs. Bernier was determined to be the rightful owner of the stock certificate constitutes prima facie evidence that there existed good ground for the lawsuit. Additionally, Ronald argues that the district court's sanction in the amount of attorney fees that arose from motions upon which Mrs. Bernier prevailed was unjustified and that she was deprived of an opportunity to oppose those fees, which, Ronald claims, should have been deducted from the award of attorney fees. As framework for our analysis of these arguments, we begin with an examination of the law of replevin.

{30}    NMSA 1978, Section 42-8-1 (1907) provides a right of action and the purpose of the remedy in replevin. It reads, "[a]ny person having a right to the immediate possession of any goods or chattels, wrongfully taken or wrongfully detained, may bring an action of replevin for the recovery thereof and for damages sustained by reason of the unjust caption or detention thereof." *Id.* In *Novak v. Dow*, this Court explained that "[r]eplevin . . . is a possessory action" and that "[t]he primary object of which is [the] plaintiff's right to the immediate possession of the property and, secondarily the recovery of damages by the plaintiff for the unjust caption[] or detention thereof." 82 N.M. 30, 34, 474 P.2d 712, 716 (Ct. App. 1970) (internal quotation marks and citation omitted). Thus, in a replevin action, the district court is called upon to enter a judgment that determines "the right to the immediate possession of the property[] and damages for its unlawful caption or detention." *Id.* (internal quotation marks and citation omitted).

{31}    In this case, Ronald contends that Mrs. Bernier succeeded in the "primary motive of her case—the return of her . . . stock [certificate] in the replevin action" and that this constitutes "prima facie evidence that the case was properly brought as a result of [Harold's] refusal to return her certificate." William disputes Ronald's assertion that Mrs. Bernier was the prevailing party. He contends that because the district court dismissed all claims against him except the replevin claim and because the court awarded zero damages for replevin based on its finding that Harold did not wrongfully retain the stock certificate, Harold was actually the prevailing party in the action. *See Hedicke v. Gunville*, 2003-NMCA-032, ¶ 27, 133 N.M. 335, 62 P.3d 1217 (holding that the prevailing party was the party who "successfully avoided an adverse judgment on every claim"); *see also Dunleavy v. Miller*, 116 N.M. 353, 360, 862 P.2d 1212, 1219 (1993) (explaining that "the prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment"). Further, William argues that the matter of who prevailed in the litigation has no bearing on the propriety of the sanctions award because Rule 1-011 does

11

not limit the court's discretion to award sanctions only to the losing party. *See Gonzales v. Surgidev Corp.*, 120 N.M. 151, 156, 899 P.2d 594, 599 (1995) (stating that sanctions are "collateral to or separate from the decision on the merits").

**{32}**     First, on the record before us, we disagree with Ronald's assertion that Mrs. Bernier prevailed in her replevin claim. We note that, although the district court ultimately found that Mrs. Bernier was the rightful owner of the stock certificate, the question of its rightful possession was left to the resolution of the sequestered case. Further, the court also found that Harold's retention of the stock certificate was not wrongful. Even assuming that, in general, a plaintiff who is deemed the rightful owner of the property, but who fails to prove damages, might be said to have prevailed in a replevin claim, we emphasize that Ronald failed to prove wrongful detention. Insofar as wrongful detention is an inextricable element of replevin, Ronald's failure in that regard precludes a holding that Mrs. Bernier prevailed in this cause of action. *See* § 42-8-1 (stating the following elements of replevin (1) the right to the immediate possession of the property, and (2) wrongful taking or wrongful detention of that property). Second, we note that the determination that Mrs. Bernier was the rightful owner of the stock certificate did not solely resolve any aspect of the replevin claim. It also resolved Harold's interpleader counterclaim. Thus, the district court's allowance of the interpleader combined with the ruling that Mrs. Bernier was legally entitled to possession of the stock certificate was equally as favorable to Harold as to Mrs. Bernier.

**{33}**     We also disagree with Ronald's assertion that the fact that the stock certificate was returned to Mrs. Bernier constitutes prima facie evidence that "good ground" existed for the commencement and continued prosecution of the replevin action. To reiterate, "the good ground requirement is a subjective standard that depends on what the . . . litigant knew and believed at the relevant time and involves the question of whether the litigant . . . was aware that a particular pleading should not have been brought." *Benavidez*, 2006-NMCA-138, ¶ 14 (internal quotation marks and citation omitted). In support of his "good ground" argument, Ronald argues that Judge Hall, before whom the replevin claim was tried, did not indicate that he thought the claim was frivolous. Ronald also argues that "Judge Vigil, who did not preside over the trial or the pre-trial proceedings, could properly have observed no subjective bad faith by Mrs. Bernier" and that "[a] replevin action was required for the return of her stock" because "[a]fter [Harold] failed and refused to return her property after due demand, Mrs. Bernier had no reasonable expectation that it would be returned to her voluntarily." On these bases, Ronald argues that there was no reasonable basis for the sanctions award. We disagree.

**{34}**     Insofar as William's requests for the sanction was raised exclusively before Judge Vigil, we do not view Judge Hall's silence on the matter of the propriety of the lawsuit material to this issue. Moreover, to the extent that Ronald ascribes to Judge Hall a view that the litigation was meritorious as support for his argument that the sanction was unjust, the attribution does not work in Ronald's favor. In regard to Ronald's actions, we again observe that at the conclusion of the damages trial, Judge Hall commented, "My main conclusion is that Harold's actions were not an unjust detention." Judge Hall explained that "you all put

12

[Harold] in an almost impossible situation" and that Harold's decision to not relinquish the stock certificate "was not at all contrary to right and justice [because] I think he was doing the best he could in an impossible situation." Judge Hall's observation of Ronald's participation in creating the "impossible situation" comported with Judge Vigil's findings in that regard. And, we note that, the impossibility of Harold's situation, to which Ronald contributed by joining with Beverly in requesting that Harold hold the stock certificate until they reached an agreement about its distribution, was one of the numerous bases upon which the district court founded the Rule 1-011 sanction.

**{35}** Further, we are not persuaded by Ronald's argument that because Judge Vigil did not preside over the replevin proceedings, she was unable to discern whether the litigation was brought in bad faith. Ronald's argument in that regard is not supported by authority, and it is contradicted by the record that demonstrates Judge Vigil received extensive briefing on the underlying facts that supported William's requests for and Ronald's opposition to a sanction, and also reflects that Judge Vigil held an evidentiary hearing on the matter. *See Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 117 N.M. 82, 87, 868 P.2d 1307, 1312 (Ct. App. 1994) (explaining that where one judge retires and a successor judge is left to determine the matter of costs, the proper procedure is for the successor judge to adduce evidence on the matter of costs and enter findings in accordance therewith). Ronald has demonstrated no error in this regard.

**{36}** Nor are we persuaded by Ronald's general assertion that Mrs. Bernier essentially had no choice but to bring the replevin action. Under our deferential standard of review in this matter, *cf. Rangel*, 2006-NMCA-120, ¶ 25, it was incumbent upon Ronald to clearly demonstrate that the district court erred. Ronald fails to meet this burden in two respects. First, he does not develop an argument based on evidence in the record that would support a conclusion that particular findings of fact by the district court were premised on a "clearly erroneous assessment of the evidence." *Rivera*, 111 N.M. at 675, 808 P.2d at 960. And second, he fails to cite to evidence in the record that supports his assertion that Mrs. Bernier felt that she had no option but to bring the lawsuit.

**{37}** Ronald's remaining arguments in regard to the propriety of the sanction relate to the purpose and structure of Rule 1-011. Our Supreme Court has explained that deterrence of baseless filings in the district court is the primary goal of Rule 1-011. *Rivera*, 111 N.M. at 674, 808 P.2d at 959. Our Supreme Court has also noted that "sanctions are intended to deter future litigation abuse, punish present litigation abuse, [and] compensate victims of litigation abuse[.]" *Id.* Rule 1-011 is also intended to compensate victims of ill-founded litigation for the expenditure of time and resources. *Rivera*, 111 N.M. at 674, 808 P.2d at 959. In accordance with these principles, the structure of the rule requires an inquiry into the subjective knowledge of the alleged offender. *See Rangel,* 2006-NMCA-120, ¶ 11.

**{38}** Ronald argues that the amount of the sanction in this case is too severe because it punishes conduct for which there existed good ground, and he further argues that had Harold complied with early requests to return the stock certificate directly to Mrs. Bernier, much of

13

the litigation could have been avoided because the suit would have been dismissed. As such, in Ronald's view, the district court should have deducted fees, including, particularly, the amount of fees incurred by Harold to oppose Mrs. Bernier's motion for summary judgment for the return of the stock certificate. Ronald also contends that he had no "meaningful opportunity" to attack the underlying support for those fees. We are not persuaded by Ronald's arguments.

{39} The district court, having heard and reviewed all of the evidence and arguments presented by the parties, found, in pertinent part, that

36. Ronald knew that there was an agreement between Beverly, Harold[,] and himself allowing Harold to keep the stock certificate for safe-keeping. Ronald knew that Harold never claimed ownership, right to possession, nor a financial interest in the stock certificate.

37. Ronald knew that had [his attorney] requested that Harold deliver the stock certificate to a neutral third party so that its ownership could be determined, Harold would have undoubtedly done so.

38. Ronald knew that there was a dispute between him and Beverly regarding returning the stock certificate to [Mrs. Bernier]. Harold also knew about this dispute when Ronald demanded Harold return the stock certificate to [Mrs. Bernier]. Ronald knew that Harold questioned his management of [Mrs. Bernier's] asset[s] and that Ronald had not answered Harold's questions to Harold's satisfaction.

39. Ronald knew that there was no credible evidence whatsoever that [Mrs. Bernier] intended that protracted litigation against her elderly brother-in-law be undertaken on her behalf.

40. Ronal[d] knew that the causes of actions alleged in the [c]omplaint such as replevin . . . should not have been brought, and despite Ronald's subject knowledge of Harold's decision to keep the stock certificate, Ronald filed the [c]omplaint against Harold.

41. Ronald knew that this case should have been dismissed and the issue of the distribution of the stock certificate could have been pursued in the guardianship case.

42. Instead, Ronald continued to pursue a claim against Harold even though he knew that Harold's health was deteriorating. . . .

43. After Harold passed away on April 26, 2009, Ronald insisted that the

14

case against Harold proceed even though Harold's family was still mourning. Therefore, Harold's son, William, entered as a substituted party on June 23, 2009.

44. This knowledge and the pattern of conduct specified in the above were subject to the [c]ourt's sanctions.

Ronald does not specifically attack the factual bases of any of the foregoing findings. In accordance with its findings, the district court concluded, among other things, that "Ronald's lawsuit was frivolous from inception, burdening both Defendant and the [c]ourt with a senseless attempt to impose liability upon Harold for his attempt to comply with the agreements among him, Ronald[,] and Beverly." The court explained that "Ronald's willful subjection of Harold to this frivolous action is precisely the kind of activity Rule [1]-011 is designed to deter." We agree. Under these circumstances, we conclude that the district court's imposition of the sanction in this case comported with the purpose of Rule 1-011, and we hold that the district court did not abuse its discretion in issuing the sanction.

**{40}** Finally, we reject Ronald's argument that he was deprived of an adequate opportunity to oppose the requested sanction. This argument is not supported by the record, which reflects that in response to William's requests for the sanction in the amount of all the attorney fees incurred in defending the action, Ronald availed himself of the opportunity to oppose the sanction. We will not consider this argument further. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (stating that assertions of counsel that are unsupported by the record provide no basis for review). And, to the extent that Ronald contends that the court's error was "compounded" by including in its sanction the award of fees that occurred during the sequestered case, Ronald's citation to the billable hours of William's attorneys, without pointing to evidence in the record of what the charges represent or where in the record his objection to those charges was preserved, we decline to consider his contention. *See Olguin v. Manning*, 104 N.M. 791, 792, 727 P.2d 556, 557 (Ct. App. 1986) ("We will not review issues raised for which there are insufficient references to the record or transcript[s] as required by the rules.").

**Rule 1-054 Costs**

**{41}** "District courts have the discretion to grant a prevailing party the necessary and reasonable costs incurred in litigating a case." *H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 2008-NMCA-013, ¶ 24, 143 N.M. 404, 176 P.3d 1136. "Costs generally are recoverable only as allowed by statute, Supreme Court rule[,] and case law." *Id.* (internal quotation marks and citation omitted). "We therefore expect district courts to exercise their discretion sparingly with regard to costs that are not specifically authorized." *Id.* And "[w]hen awarding . . . costs, the district court should explain the circumstances justifying the award." *Id.* (internal quotation marks and citation omitted)."

**{42}** Rule 1-054(D)(2)(f) provides that costs associated with "witness mileage or travel

15

fare and per diem expenses, when the witness testifies at trial" are generally recoverable as limited, in pertinent part, by NMSA 1978, Section 38-6-4(A) (1983). Section 38-6-4(A) explains, in relevant part, that a witness "shall receive per diem expense and mileage at the [current rate of up to ninety-five dollars per diem expenses per day]" when the witness testifies at trial. *See* NMSA, § 10-8-4(A) (2009) (providing the amount of allowable per diem reimbursement).

**{43}** The second amended cost bill represented: (1) witness travel expenses for Beverly Kedzior, including an air fare, a rental car, and a hotel room, totaling $844.30; (2) witness travel expenses for Beverly Bernier (Harold's widow, William's mother), totaling $2,229.42; and (3) miscellaneous costs (for parking a motor home), totaling $68.10. In awarding these costs, the district court found "that . . . Defendant's [b]ill of [c]osts is reasonable; the travel expenses and fares are reasonable; and that . . . Defendant's witnesses are entitled to recover such costs given the fact [that] they had no choice but to travel to Santa Fe and defend the lawsuit." The district court awarded William's costs pursuant to Rule 1-054 totaling $3,141.82.

**{44}** Ronald argues that the court abused its discretion by awarding these costs. Alternatively, Ronald argues that the district court should have denied the cost bill based on equitable principles—particularly whether Mrs. Bernier could afford to pay the costs. We disagree.

**{45}** The district court's award consisted of the actual travel costs of witnesses who testified at trial, and thus, they were allowable pursuant to Rule 1-054(D)(2)(f). We particularly note that the bulk of these costs reflect Beverly Bernier's travel costs. The record reflects that Ronald was afforded an opportunity to avoid the expense of Beverly Bernier's travel costs by granting defense counsel's two requests that she be permitted to testify by telephone owing to her age and her fear of flying. The result of Ronald's failure to grant that request was that Beverly Bernier had to be driven from Florida to New Mexico by her son, William, in a motor home, thus incurring travel costs in excess of $2,000. Under these circumstances, the district court did not abuse its discretion in awarding William his costs.

**{46}** As to Ronald's equity argument, although he asserts that Mrs. Bernier's assets were depleted by virtue of the events that occurred in this and in the sequestered case, he fails to point us to evidence in the record to support this assertion. Accordingly, we will not consider this argument further. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n of N.M.*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (explaining that when a party fails to cite any portion of the record to support its factual allegations, the appellate court need not consider its argument on appeal).

**Attorney Fees and Cost for This Appeal**

**{47}** Relying on *Landess v. Gardner Turf Grass, Inc.*, 2008-NMCA-159, 145 N.M. 372,

16

198 P.3d 871, William argued in his answer brief that he is entitled to recover reasonable attorney fees and costs for work done on appeal. *See* Rule 12-403(A), (B)(3) NMRA (stating that "[i]n all proceedings in the appellate court the party prevailing shall recover the party's costs unless otherwise provided by law, by these rules, or unless the court shall otherwise determine" and stating that allowable costs include that "reasonable attorney fees for services rendered on appeal in causes where the award of attorney fees is permitted by law, if requested in the briefs"). Unlike *Landess*, in which the defendants continued, on appeal, to assert the same frivolous contentions that had comprised their case in the district court, Ronald's appeal raised a number of arguable, albeit unpersuasive, arguments that warranted this Court's thoughtful consideration. *Landess*, 2008-NMCA-159, ¶¶ 20-21. Accordingly, we see no basis, in law or otherwise, to award William's attorney fees on appeal. William's attorney conceded as much at oral argument. Therefore, we do not award William's attorney fees on appeal.

**CONCLUSION**

**{48}** We affirm the district court's judgment.

**{49}  IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**M. MONICA ZAMORA, Judge**

**Topic Index for *Bernier v. Bernier*, No. 31,607**

**APPEAL AND ERROR**
Attorney Fees
Standard of Review

**ATTORNEYS**
Fees, General
Rule 11 Sanctions

**CONSTITUTIONAL LAW**
Due Process

**JUDGES**
Abuse of Discretion

**JUDGMENT**
Costs

**PROPERTY**
Replevin

**REMEDIES**
Costs
Equity