This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40453**

**FREEDOM MORTGAGE CORPORATION,**

Plaintiff-Appellant,

v.

**STEVEN G. GALLEGOS, Deceased; DOREEN GALLEGOS a/k/a DOREEN ULIBARRI CONWAY, individually and as Personal Representative of the ESTATE OF STEVEN G. GALLEGOS; TIME INVESTMENT COMPANY, INC.; and THE OCCUPANTS OF THE PROPERTY,**

Defendants,

**NEW MEXICO RESIDENTIAL FINANCIAL SOLUTIONS, LLC,**

Petitioner-Appellee,

v.

**FREEDOM MORTGAGE CORPORATION,**

Respondent-Appellant,

and

**ALDRIDGE PITE, LLP,**

Non-Party Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lisa Chavez Ortega, District Court Judge**

Aldridge Pite, LLP
Robert L. Negin
Houston, TX
Eddie Jimenez
Albuquerque, NM

for Appellant

Thunberg Law, PC
Erik B. Thunberg
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** This case arises out of a foreclosure sale conducted at the behest of Appellant Freedom Mortgage Corporation (Freedom). Following the district court's approval of the foreclosure sale, Appellee New Mexico Residential Financial Solutions (NMRFS) filed a motion to set aside the order approving the sale. The district court granted that motion in part based on equity and fairness and as a sanction against both Freedom and Freedom's counsel, the law firm of Aldridge Pite (the Firm), for alleged misconduct during the sale process. Freedom and the Firm appeal the district court's decision, maintaining their due process rights were violated by the district court's imposition of sanctions. Because no notice or opportunity to be heard was afforded to either Freedom or the Firm prior to the assessment of the sanctions, we reverse.

**BACKGROUND**

**{2}** Pingora Loan Servicing (Pingora), Freedom's predecessor in interest with respect to the mortgage in question, filed a foreclosure action and received a judgment on January 16, 2020. Foreclosure sales were scheduled several times but were repeatedly postponed. On December 17, 2020, Pingora assigned its interest in the mortgage to Freedom, with an impending foreclosure sale scheduled for January 5, 2021. At that time, however, the attorney in charge of the foreclosure sale, Travis White, did nothing to substitute Freedom for Pingora as a party. A foreclosure sale was held on January 5, 2021, and Freedom submitted a "credit" bid of approximately $273,000 for the residence. The special master in charge of the sale prepared a report of the sale and submitted it to Mr. White, with instructions to file it with the district court. By that time, however, Mr. White had apparently realized that the failure to substitute Freedom for Pingora prior to the foreclosure sale might cause a legal issue regarding the sale.[1]

---

1For reasons that have not been disclosed to this Court, Mr. White had no further involvement in this case, either below or on appeal. In addition, no testimony, affidavit, or other form of statement from Mr.

Instead of filing a motion with the district court to address the matter, Mr. White ignored the special master's instructions to file the report and on January 26, 2021, filed a notice "cancelling" the sale, even though it had already been held. Subsequently, on February 1, 2021, Mr. White filed a motion to substitute Freedom for Pingora as a party; significantly, in that motion Mr. White stated that "[t]he foreclosure sale in this matter has not yet been held." The motion to substitute was granted, and a second foreclosure sale was held on April 20, 2021. At the second sale, Freedom again submitted a credit bid; however, the bid was for $353,010, approximately $80,000 more than Freedom's previous bid at the January sale.[2] Following the submission of the special master's report of sale to the district court, the court issued an order approving the foreclosure sale.

**{3}** While the above events were occurring, one day after the first foreclosure sale, NMRFS obtained the statutory redemption rights to the house from the original borrower's heirs (the borrower was deceased). A representative of NMRFS had apparently appeared at the first foreclosure sale and become aware of the bid submitted by Freedom. After the first sale was canceled, the second sale was held, and the district court approved the special master's report and issued an order confirming the foreclosure sale. NMRFS filed a motion to set aside such order. NMRFS made the court aware of the information that Mr. White had neglected to provide to the court: (1) the existence of the January 5, 2021, sale and the special master's report thereof; (2) Mr. White's failure to file such report with the court; and (3) Mr. White's inaccurate statement claiming that the foreclosure sale had not yet been held. Freedom filed a response, NMRFS filed a reply, and the district court held a hearing. After the hearing, NMRFS submitted requested findings of fact and conclusions of law, as well as a written closing argument. In these submissions NMRFS, for the first time, raised the issue of possible sanctions under Rule 1-011(A) NMRA.

**{4}** The district court ruled in favor of NMRFS and issued findings of fact and conclusions of law determining as follows: (1) the district court and the special master were misled and deceived by Mr. White's failure to either file the original special master report from the January 5, 2021, sale or inform the district court that the January sale had been held; (2) Freedom and counsel acted deliberately in taking these actions, in an attempt to conceal the error of failing to substitute Freedom for Pingora as a party; (3) sanctions should be awarded against Freedom and the Firm, with no mention of Mr. White; and (4) based on equity and fairness to NMRFS and as a sanction against Freedom and its counsel, the order approving the foreclosure sale should be modified to approve the January 5, 2021, sale price of $273,163 as the sale price rather than the $353,010 price obtained at the April 20, 2021 sale. Freedom and the Firm appeal, challenging the imposition of sanctions in the absence of adequate notice and an opportunity to be heard.

White was submitted to the district court. His motives for the actions he took in this case, therefore, are not apparent.
2The parties dispute the reasons for this higher bid, and the significance of it will be discussed below.

**DISCUSSION**

**{5}**     New Mexico law is clear that absent direct contemptuous actions taken in the presence of the court and witnessed by that court, a party or an attorney must be provided due process prior to the imposition of sanctions. *See Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶¶ 23-24, 111 N.M. 670, 808 P.2d 955 (holding that Rule 1-011(A) sanctions should be levied only if the mandates of due process are obeyed, and stating that "[f]undamental fairness requires that an individual must be permitted to defend himself against charges that threaten to stain his personal and professional future" and that the basic protections of due process must be followed); *Bernier v. Bernier, ex rel. Bernier*, 2013-NMCA-074, ¶ 25, 305 P.3d 978 (pointing out that due process requires that an attorney be given notice of the possible imposition of Rule 1-011(A) sanctions, may require specific notice of the reasons for the possible sanctions, and mandates that the accused attorney be given an opportunity to respond); *Doña Ana Sav. & Loan Ass'n v. Mitchell*, 1991-NMCA-054, ¶ 13, 113 N.M. 576, 829 P.2d 655 (same); *see also Concha v. Sanchez*, 2011-NMSC-031, ¶ 27, 150 N.M. 268, 258 P.3d 1060 (restricting the use of summary contempt sanctions to situations in which a person has committed disruptive behavior in an ongoing court proceeding, and within the personal perception of the judge).

**{6}**     At a minimum, due process requires that a party or attorney facing possible sanctions by the district court be provided notice that they are facing the possibility of sanctions, and an opportunity to respond, prior to the imposition of the sanctions. *See Rivera*, 1991-NMSC-030, ¶¶ 23-24; *Bernier*, 2013-NMCA-074, ¶ 25; *Doña Ana Sav. & Loan Ass'n*, 1991-NMCA-054, ¶ 13. Such notice could come in the form of a motion, such as one requesting an award of attorney fees, *see Bernier*, 2013-NMCA-074, ¶ 25; an order to show cause, *see Doña Ana Sav. & Loan Ass'n*, 1991-NMCA-054 ¶ 14; or in some other manner that provides adequate notice to the accused attorney or party that they face the possibility of sanctions. In this case, however, no notice was given prior to the district court's imposition of the sanctions against Freedom and the Firm. A request for sanctions that appears for the first time in requested findings of fact and conclusions of law, after a hearing has already been held and briefing completed, is not sufficiently timely and provides no real opportunity for a response to the request. For example, Freedom and the Firm did not have an opportunity to call Mr. White to the stand, or have him testify by affidavit or otherwise, to possibly explain his actions with regard to the January 5, 2021 foreclosure sale. Similarly, the Firm had no notice at all that it, rather than Mr. White, might be sanctioned as a result of Mr. White's actions, and had no opportunity to address that possibility prior to the imposition of the sanctions.[3] It is

3We note the Firm's argument in its brief in chief, to the effect that under New Mexico's version of Rule 1-011, sanctions may not be imposed against a law firm rather than against the individual attorney who committed the alleged infraction. This argument was not raised below in the Firm's motion requesting reconsideration of the district court's decision, and contrary to the Firm's contention in its reply brief, raising the issue in the docketing statement is irrelevant to the issue of whether the argument was preserved in the district court so that we may address it on appeal. *See Alcantar v. Sanchez*, 2011-NMCA-073, ¶ 59, 150 N.M. 146, 257 P.3d 966 (noting that to preserve an issue for appeal, a party must clearly raise that issue in the district court and invoke a ruling from that court). We therefore do not

apparent, therefore, that the sanctions imposed against Freedom and the Firm must be reversed.

**{7}**      NMRFS seems to maintain that the reduction in the foreclosure sale price should remain in place because the district court took that action not just as a sanction against Freedom and the Firm but also based on equity and fairness. We reject this argument because the record is not clear as to whether each of the district court's grounds for imposing the sanctions stands independently of the other, or whether it was the combination of equity, fairness, and sanctions that led the court to reach its decision. In other words, it is possible that the district court would have reached the same decision in the absence of its belief that sanctions were warranted; however, it is also possible that it would not have done so. The entire decision must therefore be reversed, and this matter remanded to the district court to allow that court to provide Freedom and the Firm with the protections of due process prior to making any decision as to the sanctions issue.[4]

**CONCLUSION**

**{8}**      Based on the foregoing, we reverse the district court's decision in this matter and remand for further proceedings.

**{9}      IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**

---

address this question and leave it for the district court to decide in the first instance, should the Firm raise it on remand.

[4] Given our reversal on due process grounds, we decline to address Freedom and the Firm's alternative argument that the order of sanctions should be dismissed because such was not supported by substantial evidence.